[Civil No. 3628.   Filed September 23, 1935.]

[49 Pac. (2d) 396.]

GEORGE OSSIC, Petitioner, v. VERDE CENTRAL
MINES, Defendant Employer, INDUSTRIAL
COMMISSION OF ARIZONA, Defendant In-
surance Carrier, Respondents.

Mr. Burt H. Clingan, for Petitioner.

Mr. Don C. Babbitt and Mr. Emil Wachtel, for Respondent Industrial Commission.

LOCKWOOD, C. J.—George Ossic, hereinafter called petitioner, was seriously injured while in the employ of the Verde Central Mines, a corporation, hereinafter called the company, and made application to the Industrial Commission of Arizona, hereinafter called the commission, for compensation. There was no dispute that he was injured by an accident arising out of and in the due course of his employment, the only matter requiring serious consideration by the commission being as to the extent of his injuries and the amount of the compensation. He was given the best of medical care for a period extending over approximately four years and was allowed compensation on the basis of total temporary disability, at the end of which time the physicians for the commission stated that everything possible had been done to restore him to health; that his condition had become static; and that a final disposition should be made of the case. On the 16th day of March, 1934, the

following findings and award were made by the commission:

"1. That the above-named applicant, while employed in the State of Arizona by the above-named defendant employer, who was insured against liability for compensation under said law by the above-named defendant insurance carrier, sustained an injury by accident arising out of and in the course of his said employment on February 21, 1930, which injury caused temporary disability entitling said applicant to compensation therefor in the total sum of $6,536.18, of which $6,505.29 has been paid.

"2. That said injury caused also a permanent partial disability equal to the loss of use of the left eye, entitling the applicant to compensation therefor in the sum of $103.46 monthly for a period of twenty-five months.

"3. That said injury caused a further permanent partial disability by reason of loss of teeth and facial disfigurement entitling the applicant to compensation therefor in the sum of $103.46 monthly for a period of eighteen months.

"4. That said injury caused also a general permanent partial disability equal to fifteen per cent of total permanent disability entitling the applicant to compensation therefor in the sum of $15.52 monthly during the period of disability, the first payment to be made on June 13, 1936.

"5. That the applicant has received advances against the above mentioned compensation for partial permanent disability in the sum of $1,450.00.

"Award

"Award is hereby made payable to said applicant by the named defendant insurance carrier as follows:

"1. The sum of $62.46 payable forthwith.

"2. The additional sum of $103.46 monthly for a period of 26 months, the first payment to be made on April 13, 1934; and the additional sum of $15.52 monthly during the period of disability, the first payment to be made on June 13, 1936.

"It is ordered that any payments of compensation heretofore made on account of said injury are to be credited upon this award; that any party aggrieved

by this award may apply for rehearing of the same, by filing application therefor at the office of this Commission, within twenty days after the service of this award as provided by the rules and regulations of this Commission; and that jurisdiction be, and it is hereby, reserved to alter, amend or rescind this award upon good cause.''

Petitioner made an application for rehearing which was denied by the commission on the ground that the application had not been made in time. This refusal to grant a rehearing came before us on *certiorari,* and we held in the case of *Ossic* v. *Industrial Commission,* 44 Ariz. 366, 37 Pac. (2d) 401, that petitioner was entitled to a rehearing on the award of March 16, 1934, and that award was set aside. In accordance with such order of the court a rehearing was granted by the commission at which evidence was taken and on March 2, 1935, the commission again affirmed its findings and award of March 16, 1934, as above set forth, and it is this last award which has been brought before us in this proceeding.

It is the contention of petitioner (a) that the finding and award of the commission that his temporary total disability has ceased is contrary to the evidence; and (b) that if the temporary disability has ceased so that his condition has become static, it is one of permanent total disability and not of disability to the extent of 15 per cent. of total permanent disability, as found by the commission; and (c) that even if his condition be one of partial permanent disability, the computation of the extent of such disability was not legally made.

In order to determine these questions it is necessary that we first state the facts in the case, giving the evidence a construction most favorable to the findings of the commission, as under our oft-repeated rule we must, and then determine whether

the commission properly applied the law to these facts. Petitioner on the 21st of February, 1930, was a mine foreman in the employ of the company. He was at that time a man thirty-seven years of age, in robust health, and experienced and skillful in his occupation, but was, generally speaking, uneducated and unable to do any work outside of mining except unskilled manual labor. At the time of his injury he was unloading certain material with a hand winch which in some way got out of control, the handle flying back and striking him on the face, badly mangling and, in fact, almost destroying the tissues on the left side of the face, his jaw bone, his teeth, and the roof of his mouth. He was immediately taken to the hospital and was given the best possible medical treatment both in Arizona and later by specialists in Los Angeles, but while his life was saved, he lost the use of his left eye entirely, many of his teeth were knocked out, the roof of his mouth was destroyed, and the lower part of his face was terribly disfigured. After some four years of treatment, most of his physicians concurred in a report that it was very unlikely medical and surgical treatment could improve his condition, though his sinuses were apparently in such a condition that they needed continual irrigation and cleansing to prevent a spreading of an infection, his speech was permanently impaired, and his mastication of ordinary foods seriously interfered with. The concensus of opinion of the medical experts was that in addition to and exclusive of the disability caused by the loss of the use of the left eye and that caused by facial disfigurement and loss of teeth, there was a general permanent partial disability equivalent to 15 per cent. of total permanent disability. The award was then made on the basis of temporary total disability up to the time when the physicians reported his condition had be-

come static and a further award was made (a) of compensation for the loss of use of an eye at $103.46 per month for twenty-five months; (b) compensation for the loss of teeth and facial disfigurement at $103.46 for eighteen months; and (c) a permanent partial disability allowment of 15 per cent. of what would have been due for permanent total disability, being an award of $15.52 so long as such permanent partial disability existed.

We consider first the question as to whether the commission was justified in finding that petitioner's condition had become static so that they were entitled to change the award from a temporary to a permanent one. Most of the medical witnesses agreed that his condition as it existed on March 16, 1934, would probably remain practically the same during his lifetime. The compensation act (Rev. Code 1928, § 1391 et seq.) contemplates that when an employee is injured from an accident arising out of and in the due course of his employment he shall receive temporary disability compensation until such time as his condition becomes static, at which time if there be any continuing disability, it shall be considered permanent and future compensation shall be awarded him on that basis. The rate and period of the compensation for both temporary and permanent disability is set forth in section 1438, Revised Code 1928. The commission made an award originally on the basis of temporary total disability, and there is no complaint by petitioner of this award or the payments thereunder up to the time of the award of March 16, 1934. Although it is his contention that his temporary total disability still continues, we are of the opinion the commission was justified in finding under the evidence that the temporary condition had become a permanent one, so that future payments should be based upon those provisions of the section

applying to permanent and not to temporary disability. The vital question, however, is on what basis the award for permanent disability should be made under the circumstances set forth above. Permanent disability may be either total or partial. If it be total, the compensation is fixed by section 1438(B), *supra,* as follows:

"In cases of total disability adjudged to be permanent, compensation of sixty-five per cent of the average monthly wage, during the life of the injured person.

"Disability caused by the following specified injuries, in the absence of proof to the contrary, shall be deemed total and permanent: 1. The total and permanent loss of sight of both eyes; 2. the loss by separation of both feet; 3. the loss by separation of both hands; 4. an injury to the spine resulting in permanent and complete paralysis of both legs or both arms, or one leg and one arm; 5. an injury to the skull resulting in incurable imbecility or insanity; 6. the loss by separation of one hand and one foot."

It will be noted that the compensation for total permanent disability is 65 per cent. of the average monthly wage of the injured workman during his lifetime. The statute describes six specific characters of injury which shall be presumed in the absence of proof to the contrary to be both total and permanent. It then continues:

"This enumeration is not exclusive, and in all other cases permanent total disability shall be determined in accordance with the facts."

It is not contended that petitioner's injury came under any of the six specified classes of permanent total disability, but it is most strenuously urged that his injuries as a matter of fact do amount to permanent total disability under the general provision just quoted, and that therefore he is entitled to compensation on that basis. It was the position of the com-

mission that his injuries, although permanent in character, were not total but partial merely, under the following provisions of section 1438(C), *supra:*

"Disability caused by the following specified injuries, shall be deemed a permanent partial disability, and compensation of fifty-five per cent of the average monthly wage shall be paid in addition to the compensation paid for temporary total disability for the period named in the following schedule; . . . (q) the permanent and complete loss of sight in one eye without enucleation, twenty-five months; . . . (v) for permanent disfigurement about the head or face, which shall include injury to or loss of teeth, the commission may allow such sum for compensation thereof as it may deem just, in accordance with the proof submitted, for a period not to exceed eighteen months; (w) where the injury causes partial disability for work, the employee shall receive, during such disability, compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the monthly wages he is able to earn thereafter, but the payments shall not continue after the disability ends, or death of the injured person, and in case the partial disability begins after a period of total disability the period of total disability shall be deducted from such total period of compensation."

The commission contends that petitioner's injuries, although received at the same time as the result of the same accident, are by the statute classified under three separate and independent heads and that compensation must be computed under each head separately and then the amounts of the compensation so computed stated separately in the award. Following this theory, the commission allowed 55 per cent. of the average monthly wages of petitioner for twenty-five months for his injury under subdivision (C) (q), (§ 1438), *supra,* 55 per cent. of his average wages for eighteen months under subdivision (C) (v) (§ 1438), *supra,* and then bases its award for his

remaining disabilities on the testimony of the medical experts as to what percentage of total disability those remaining injuries alone caused, disregarding entirely for that purpose the effect of the injuries caused by the loss of the use of the eye and of the teeth.

It is the position of petitioner that when at one time and in the same accident an employee receives a number of injuries, his compensation must be based on the total loss of earning power caused by all of the injuries considered together, and not upon a separate award for each separate injury as scheduled in section 1438, *supra.*

The question is one which has never been passed upon in this jurisdiction, nor have we been cited to any decisions in other jurisdictions which deal with the same situation. In determining the matter we must therefore look to the act itself, and if there be no specific provisions thereof which bear upon the issue, we should consider the general purpose of the act and construe it so as to best effectuate that purpose with justice to all the interested parties.

Workmen's Compensation Acts are an outgrowth of theories of economics developed during the last fifty years. During the eighteenth and most of the nineteenth centuries, legislators and courts alike believed that the doctrine of *laissez faire* was the fundamental principle of all economic relations, including that of employer and employee, and that the only protection permitted to or required by an employee in case of death or accident as a result of his employment was the common-law right pertaining to all persons injured through the negligence of another. But little protection as such right commonly gave, it was even more limited by the enunciation of the doctrines commonly called "assumption of risk" and "fellow servant rule." The practical effect of these

principles was that in all except the rarest cases the employee alone bore the burden of loss occasioned by his injuries. These rules, although harsh, were perhaps fairly workable in primitive times before the industrial revolution came into full effect, but as time went on and the units of production became larger and larger, their practical working results were so inherently and obviously unjust as to awaken a revolt in the minds of all who were not blinded by their immediate selfish interests, and this revolt culminated in the employers' liability and workmen's compensation laws now practically universal in western Europe and found in almost every state in the Union. At first the remedy took the form of the so-called employer's liability law, which continued the old theory of an action for damages, but abolished the defenses of fellow servant and assumption of risk, and greatly limited that of contributory negligence. But this system, while a tremendous improvement upon the old one, was yet lacking, for the reason that the ordinary injured employee was not in a financial condition to secure his rights through litigation, and was therefore frequently forced to accept as a compromise a sum much less than that to which he was really entitled, while the threat and uncertainty of litigation was burdensome to the employer also. For this reason, most states have adopted what are commonly called Workmen's Compensation Acts. These acts are based upon a recognition of the principles set forth in the case of *State ex rel. Munding* v. *Industrial Commission,* 92 Ohio St. 434, 111 N. E. 299, 303 (Ann. Cas. 1917D 1162, L. R. A. 1916D 944) as follows:

"And the theory upon which the compensation law is based (which is now generally accepted) is that each time an employee is killed or injured there is an economic loss which must be made up or compen-

sated in some way, that most accidents are attributable to the inherent risk of employment—that is, no one is directly at fault—that the burden of this economic loss should be borne by the industry rather than by society as a whole, that a fund should be provided by the industry from which a fixed sum should be set apart as every accident occurs to compensate the person injured, or his dependents, for his or their loss. . . .

"The right to be compensated for an injury has no element of bounty or charity about it. No part of the fund (except such part as it pays for the protection of its own employees) is contributed by the state.

"As we have before stated, the theory is that when an employee is injured or killed in course of his employment, a sum fixed by law is set off from the fund to compensate him for his injuries, or his dependents for his death, to compensate for taking away the man's right to earn a livelihood, which, but for the accident, he would have earned."

This same basis and purpose of compensation acts is set forth in different language in practically every case which has considered the matter, and our act is undoubtedly founded upon the same principle. It is further recognized by practically all the courts that acts of this nature are to be given a broad and liberal construction in order to effectuate their evident intent and purpose. *Re Sullivan*, 218 Mass. 141, 105 N. E. 463, L. R. A. 1916A 378; *In re Petrie*, 215 N. Y. 335, 109 N. E. 549; *Peet* v. *Mills*, 76 Wash. 437, 136 Pac. 685, L. R. A. 1916A 358, Ann. Cas. 1915D 154. With this rule of construction we also agree. While we may not violate the clear language of the act, merely because in our opinion we think some other provision would have been wiser, yet where there is any reasonable doubt as to the construction to be given it, either in part or in whole, that construction should be adopted which will best effect the purpose of seeing that the injured work-

man is reasonably compensated for the loss of his earning power caused by the injuries which he has sustained through a compensable accident.

██ It is true that the legislature has in its wisdom fixed a specific and arbitrary compensation for certain specific injuries in section 1438, *supra,* and has in effect said that the amount so fixed shall be deemed conclusively to be adequate for the loss of earning power resulting therefrom. In subdivision (B) (§ 1438), there are six specified injuries which are considered permanent total disability. In subdivision (C) (§ 1438), there are some twenty-two specified injuries which are presumed to be permanent partial disability and for which a fixed compensation is provided. Of course, when the injury consists of one of the specified scheduled ones and of that alone, the commission is without jurisdiction to make an award on any different basis than that set forth in the statute, for as was said in *Ujevich* v. *Inspiration Consol. Copper Co.*, 42 Ariz. 276, 25 Pac. (2d) 273, 275:

"The Legislature selected certain kinds of injuries or losses that employees suffer and fixed a definite sum or a rule for ascertaining that sum and said, in effect, such sum together with the temporary total disability compensation shall be in full satisfaction of the employee's loss. It provided compensation for such loss whether any permanent disability to earn wages followed or not. It assumed that every loss enumerated would cause some permanent loss of earning power, and arbitrarily fixed the compensation therefor. While the application of this rule may in some instances compensate the employee more than he has been disabled, in others he doubtless will receive less than his ability has been depreciated by reason of the accident."

The legislature, however, has recognized that the injuries scheduled are by no means all of those which may be received during an accident and has very

properly and wisely provided that for unscheduled injuries, either total or partially permanent in their nature, compensation shall be awarded in accordance with the facts of the case. Section 1438, *supra*. It has also recognized the undoubted fact that the actual loss of earning power occasioned by a combination of two or more separately scheduled injuries may be much greater than the amount reached by merely adding together the losses presumed to be caused by each of such injuries considered separately. For instance, under subdivision (C) (p) and (q) (§ 1438), the decrease in earning power caused by the loss of one eye is presumed to be compensated by a maximum of thirty months payment. If mere addition is the rule to be followed, then if both eyes are lost the compensation should be limited to sixty months. The legislature, however, has said that the loss of both eyes shall be considered total permanent disability for life and has allowed compensation on that basis. Under subdivision (C) (n) (§ 1438), the decrease in earning power caused by the loss of a foot is presumed to be compensated by a maximum of forty months payment. If the decrease of earning power caused by the loss of both feet is to be calculated by simple addition, compensation should be allowed for eighty months, while, as a matter of fact, the legislature has again made such loss compensated for life. The same rule applies to the loss of one hand as compared to that of both hands. These facts are evidence that the legislature has realized that in compensation cases two plus two does not necessarily equal four, but in some cases may equal six or more. We are of the opinion that this rule, which the legislature has specifically adopted for certain classes of multiple injuries, is in logic and in justice the one which should be applied to all cases of such injuries, where another rule is not expressly

set forth in the statute. In other words, that when the legislature has scheduled several injuries to be compensated at a fixed rate when incurred separately, and several of such injuries are received at the same time, the commission must consider the total picture of all the injuries in computing the extent of the disability, rather than merely adding the amounts allowed for the several separate and distinct injuries. That the legislature intended this method of procedure we think is evidenced by the following language occurring in section 1438, *supra*, after the statement of the various scheduled injuries and the compensation allowed therefor:

"Where there is a previous disability, as the loss of one eye, one hand, one foot, or any other previous disability, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

By the terms of this provision, if two scheduled injuries are received at different times, the commission is directed to determine the entire disability as it exists after the second injury, and in apportioning the compensation for which the last employer is responsible, to deduct the percentage of the first disability from the total disability as it existed after the subsequent injuries. If the complete effect is the test when the injuries are received separately, we see no reason why it should not be the same when they are received simultaneously.

We hold, therefore, that the commission in computing and awarding compensation for the permanent disability which it found existed after petitioner's condition had become static should not have computed separately the various scheduled injuries and then added the amount of the compensation al-

lowed for each separate injury, but should rather have computed the total percentage of disability as it existed as the result of all the separate injuries, and based its award upon that status. Whether so computed the award would have been in total amount greater or less than that which petitioner actually received, would depend upon what the evidence shows the total percentage of his disability amounts to.

One other question is raised as to the method of computing the extent of his disabilities. Is this to be based upon the actual physical and mental ability of the injured person to do work if he is able to obtain it, or must there also be taken into consideration the effect of the injury upon his ability to *secure* the work? Let us use an extreme case as an illustration of the question. Suppose a man's face to be so horribly mangled as the result of an accident that its mere sight creates horror, aversion and disgust in the minds of the observer, while both his physical strength and mental ability remain unimpaired. Such cases, while rare, have actually occurred. From the one point of view his lost earning power is nil, for he has the physical and mental ability to perform any task in which he has theretofore been engaged. On the other hand, it is obvious that it would be practically impossible for such an unfortunate sufferer to obtain employment, especially if his occupation had been one which required him to mingle much with other people. What is the basis of computing loss of earning power under such circumstances? The question has been discussed in many cases, but we think the true rule is well summarized in the concluding paragraph of the case in *Re Sullivan*, 218 Mass. 141, 105 N. E. 463, 464, L. R. A. 1916A 378, wherein it is said:

"He is deprived of the benefit which the statute promises to him if he is told that because he could

do some work if he could get it, he is not under an incapacity for work, although by reason of his injury he can obtain no opportunity to work.''

We therefore hold that in determining the percentage of disability the commission should consider not only the actual impairment of the physical and mental capacity of the injured person to do work, but whether and to what extent his injury is likely to deprive him of the ability to secure the work which he might do if he were permitted to attempt it.

In a future hearing the commission, having been advised of the principles of computing compensation which the law has laid down, will doubtless follow them correctly. The award is set aside.

McALISTER and ROSS, JJ., concur.