375 P.2d 377

**Fritz A. EDMISTON, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Hughes Aircraft Company, Employer, Argonaut Insurance Company, Carrier, Respondents.**

**No. 7484.**

Supreme Court of Arizona.

En Banc.

Oct. 18, 1962.

Rehearing Denied Nov. 13, 1962.

Jose Del Castillo, Tucson, for petitioner.

Donald Morgan, C. E. Singer, Jr., Phoenix, for Industrial Commission of Arizona, respondent.

Boyle, Bilby, Thompson & Shoenhair, Tucson, for Hughes Aircraft Co. and Argonaut Ins. Co., respondents.

LOCKWOOD, Justice.

This is a proceeding by certiorari to review an award of the Industrial Commission of Arizona which denied petitioner compensation.

Fritz A. Edmiston, the petitioner, was employed by Hughes Aircraft Company from 1954 to May, 1961. He worked as a painter until July, 1958, and was then transferred to work in the blueprint section operating an ozalid machine. Fumes from ammonia used in the ozalid machine processes were constantly present where Edmiston was working. Also, he had to handle a special type of paper on this job, a dye paper called ozalid, which was used in the blueprinting. Edmiston worked in the blueprinting department until May 17, 1961, when he was released on leave for medical treatment.

During the latter part of 1958 Edmiston had complained to Dr. Webb, the employer's plant physician, of an eczematoid condition of his right hand. Dr. Webb gave Edmiston some ointment to put on the hand, and the condition cleared up for a while. However it recurred at various times during the period between December, 1958 and April 4, 1961, and each time the ointment was applied. According to petitioner's testimony this dermatitis cleared up on weekends, but reappeared when he was again at work with the ozalid machine. This, together with the fact that after breathing the ammonia fumes Edmiston became quite ill, led him to believe that the dermatitis was caused by either the ammonia or the ozalid paper. During this time Dr. Webb made no test to determine the cause of the hand condition, which he termed as trivial.

During the same period of time, Edmiston's asthmatic condition, which dated back to 1943 but which he testified had not bothered him during the period of several years before 1958, became more severe. He sustained several attacks during the period he was working at the ozalid machine and was hospitalized on some of the occasions. He also attributed this worsening of his chest condition to his job, and the constant breathing of the ammonia fumes.

In April, 1961, when severe eruptions occurred on both his hands, Edmiston went again to Dr. Webb, who performed various patch tests on Edmiston, using both the ozalid paper and the ammonia in the tests to try to determine the cause of his dermatitis. The doctor found the results negative. Petitioner then saw another doctor, O. R. Jensen, who also performed patch tests with the same substances. Dr. Jensen

found a four-plus positive reaction. In May, 1961, the petitioner was also referred by the plant physician to a Dr. Miller for diagnosis and evaluation of the dermatitis. Dr. Miller performed some patch tests, and the results showed a four-plus reaction from the ozalid paper and also from the ammonia. Dr. Miller then submitted a report to the employer on May 8, 1961, stating that he felt that petitioner was suffering from contact dermatitis which was most likely caused by some material in the ozalid paper and the ammonia, to which the petitioner was highly allergic.

The employer filed its first report to the Arizona Industrial Commission on June 12, 1961. In it the employer stated that petitioner sustained dermatitis of the hands, which occurred while petitioner was working in the blueprint section of the employer's plant. One week later the petitioner filed his report of the injury and claim for compensation.

On June 23, 1961, the Commission made an award that the claim was non-compensable, finding that the petitioner did not file his claim within the year after the case be-came manifest, and the Commission lacked jurisdiction, in the premises.[1] Petitioner filed a timely protest and petition for rehearing. Witnesses were examined at the rehearing held on September 7, 1961. On November 2, 1961, the Commission reaffirmed its previous finding and award giving two reasons: (1) That applicant failed in his burden of proof to show injury by accident arising out of and in the course of his employment with the employer; and (2) That applicant suffered *contact dermatitis* in 1958, but no claim therefor was filed within the time required under the Occupational Disease Act,[2] and therefore the Commission had no jurisdiction.

Petitioner claimed that the Commission's findings and award were not supported by the facts, since (1) there was sufficient evidence presented by the petitioner that the dermatitis and the worsened asthmatic condition resulted from an accident arising out of and in the course of his employment; and (2) since his claim was filed within the time required by statute[3] the cause and result of the injury were not made manifest to the petitioner through a competent diag-

---

1. See A.R.S. § 23–1061(D) which reads: "No application for compensation shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or the right thereto accrued."

2. A.R.S. § 23–1224: "The right to compensation under this chapter for disability or death from an occupational disease shall be forever barred unless written claim is filed with the commission with the time following:

\* \* \* \* \*

"2. If the claim is made by an employee and based upon a disease other than silicosis or asbestosis it shall be filed within sixty days after the employee first becomes disabled, except in case of poisoning by benzol or its derivatives, when it shall be filed within ninety days."

3. Ibid.

nosis and determination by a skilled medical physician, which did not occur until 1961.

Since the Workmen's Compensation Act is remedial in its nature, it must be liberally construed to effectually carry out its intended purposes. Dunlap v. Industrial Commission, 90 Ariz. 3, 363 P.2d 600 (1961). However, the burden is still on the claimant to show affirmatively by a reasonable preponderance of the evidence that he is entitled to compensation. In so doing he must establish that the injury or disease arose out of and in the course of his employment, by showing a causal relationship between the injury and the conditions under which the work was to be performed. Mead v. American Smelting & Refining Company, 90 Ariz. 32, 363 P.2d 930 (1961). If the petitioner fails to sustain this burden, he is not entitled to compensation.

It is also the law in this jurisdiction that the findings of the Industrial Commission will not be disturbed when the evidence is conflicting and there is substantial evidence to support their findings. Mead v. American Smelting & Refining Company, supra; Damiani v. Industrial Commission, 86 Ariz. 269, 344 P.2d 1020 (1959). The precise issue thus boils down to the question of whether the Industrial Commission finding that the injury to the petitioner did not arise out of and in the course of his employment is supported by competent evidence.

The evidence of the medical witnesses, regarding the causal factors of the illness, was conflicting. Two doctors testified that there was a marked possibility that the petitioner's dermatitis was caused by the substances which he had to handle while employed at the ozalid machine in the blueprint department of the plant. However, other doctors testified that his dermatitis was not due to the conditions of his employment. As to whether the petitioner's dermatitis was caused by either the ozalid paper or the ammonia, Dr. Webb stated, "I would say it would be a good medical certainty it wouldn't be."

Dr. Baker, a medical specialist in dermatology testified that he had treated the petitioner for a similar condition of the hands in 1951 and again in 1961. In his opinion neither the ozalid paper or the ammonia would revive or bring back the condition.

As to the asthmatic condition of the petitioner, no positive testimony was elicited from any of the medical experts to support petitioner's theory that the breathing of the ammonia fumes may have been a cause to aggravate the pre-existing condition of the petitioner. The only real testimony adduced was from petitioner's own witness, Dr. Emery Metz Wright, Jr., whose testimony helped negate petitioner's theory. In his opinion, petitioner's lung condition was caused "from the prolonged, continuous smoking of cigarettes."

There being substantial evidence to support the finding of non-compensation by the Industrial Commission, the finding must be affirmed.

It is not necessary to decide whether the claim was filed within the statutory period, since there was substantial evidence in the record from which the commission could find that petitioner's injuries did not arise out of and in the course of his employment.

Award affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concur.