507 P.2d 991

Dennis E. CRAMER, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Salt River Project Agricultural Improvement and Power District, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 717.

Court of Appeals of Arizona, Division 1, Department B.

March 22, 1973.

Rehearing Denied April 17, 1973.

Review Denied May 8, 1973.

John S. Schaper, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent Industrial Commission.

Robert K. Park, Chief Counsel, State Compensation Fund, by Ronald M. Meitz, Phoenix, for respondent carrier.

JACOBSON, Chief Judge, Division 1.

This appeal, in an Industrial Commission award setting, requires the court to define what is the "open labor market" in determining loss of earning capacity following an industrial injury.

This is the second appeal involving this double amputee workman. In the first appeal, State Compensation Fund v. Cramer, 13 Ariz.App. 103, 474 P.2d 462 (1970), we held that while the injured workman's injuries, which were compensable under A.R.S. § 23-1045, subsec. C, were presumed to give rise to a 100% loss of earning capacity, this presumption was rebuttable by proof that in fact the injured workman had a post-injury earning capacity. Based upon the failure of the Commission to consider evidence relating to post-injury earnings, we set aside an award of the Commission finding a 100% loss of earning capacity.

Following the issuance of our mandate in that case, the parties stipulated that the evidence previously received in this case could be considered by the Commission in determining whether in fact the injured workman had a post-injury earning capacity.

This evidence, touched on in our previous opinion but not discussed in detail, shows that following Mr. Cramer's injuries of March 1, 1968, which resulted in the amputation of both his left arm and right leg, he was fitted with prosthetic devices in May of 1968. At the time of his injury, Mr. Cramer was employed as a lineman by the Salt River Project. On August 12, 1968, Mr. Cramer was rehired by the Salt River Project as a "Grade I Estimator." This job requires him to inspect job sites and coordinate the efforts of the various departments of the project in order to arrive at a final estimate of job costs. In order to perform adequately his duties as an estimator, the project has supplied Mr. Cramer with a specially equipped vehicle.

While there was evidence that the project "held open" this position for Mr. Cramer, in the sense it did not fill an opening in this particular position during Mr. Cramer's convalescence, the evidence is clear that the job was neither created nor was Cramer maintained in it as a result of any sympathy on the part of his employer. As his immediate supervisor, in answer to a question as to how Mr. Cramer compared with other estimators employed by the project, stated, "I believe he would rate right up with the best." Other evidence was introduced to show that Mr. Cramer could properly perform his duties as an estimator in spite of his handicap, that his prior experience as a lineman was invaluable in his job as an estimator and that he was a valued employee.

In addition, there was evidence presented by Mr. Cramer, through an employment expert, that considering Mr. Cramer's handicaps, he would have difficulty securing other employment in the open labor market.

The starting salary of an estimator at the time of Mr. Cramer's injuries was $589.00. Based upon this evidence, the Commission determined that Mr. Cramer had suffered a 41.1% loss of earning capacity and entered an award to this effect. This appeal by writ of certiorari from that award followed.

Petitioner's contention is succinctly stated in his opening brief as follows:

"The basic fallacy inherent in the Commission award lies in the determination of a right to permanent disability benefits based entirely upon evidence of earnings in one post-injury occupation. Loss of earning capacity must be determined by establishing whether the employee is able in his injured condition to sell his services in the open labor market, and if so, for how much."

The argument continues that since the carrier presented no evidence as to what Mr. Cramer's services were worth "in the open labor market," this burden being the carrier's where an A.R.S. § 23–1045, subsec. C injury is involved, the award is unsupported by the evidence.

It is true that the Arizona courts have on numerous occasions stated the test for determining loss of earning capacity utilizing the words "open labor market" or words of similar import. The case of Davis v. Industrial Commission, 82 Ariz. 173, 309 P.2d 793 (1957), is illustrative:

"The object is to determine as near as possible whether in a *competitive labor market* the subject in his injured condition can probably sell his services and for how much." 82 Ariz. at 175, 309 P.2d at 795. (Emphasis added.)

*Also see,* Jackson v. Industrial Commission, 16 Ariz.App. 69, 491 P.2d 19 (1971); Sutton v. Industrial Commission, 16 Ariz. App. 334, 493 P.2d 501 (1972).

In reality, the concept of an entity consisting of the "open labor market" or the "competitive labor market" is a legal fiction

when used in the sense that there exist employers ready, willing and able to hire each and every individual who presents himself for employment. The availability of employment for a particular individual has always been restricted by such considerations as education, training, past experience, availability of jobs involving particular skills, work habits, personality characteristics, and a myriad of other factors. A healthy, whole individual when seeking employment is faced with these restrictions. Thus a workman with only a high school education does not have available to him jobs in the "open labor market" which require a college degree. Likewise, an individual who has spent his working life in jobs requiring only mental duties may not have available to him on the "open labor market" jobs requiring strenuous physical exertion. Courts in using such terms as "open labor market" or "competitive labor market" have attempted to verbalize a concept of employability "undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps." 2 Larson, Workmen's Compensation Law § 57.51, at 88.1 (1970).

In using this verbalized concept, what courts are attempting to ascertain is to what extent a workman's injuries, by themselves and acting alone, affect his or her ability to earn a living, taking into consideration his or her non-injury attributes such as education, skills, training, etc. In this context, terms such as "open labor market" or "competitive labor market" are words of art denoting this conceptual legal policy. We, therefore, hold that where an injured workman has post-injury earnings, lack of evidence of employability by other employers does not by itself preclude a finding of earning capacity.[1] Our holding is consistent with the numerous pronouncements of Arizona courts that evidence of

1. We do not mean to intimate that evidence that a workman, because of injuries, is unable to obtain any employment, especially in the case of the unemployed injured workman, may not be material as to the issue of earning capacity, or in determining whether or not a working injured workman is holding his job and earning his livelihood based upon factors unrelated to this earning capacity.

post-injury earnings raises a presumption, although not necessarily conclusive, of post-injury earning capacity. State Compensation Fund v. Cramer, *supra*; Maness v. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967); Laird v. Industrial Commission, 8 Ariz.App. 196, 445 P.2d 79 (1968); Gutierrez v. Industrial Commission, 8 Ariz. App. 477, 447 P.2d 569 (1968); Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959); Barnard v. Industrial Commission, 91 Ariz. 1, 368 P.2d 749 (1962).

The evidence is clear in this case that Mr. Cramer's post-injury earnings with the Salt River Project are not subject to those factors such as sympathy of his employer, business booms or temporary good luck which would preclude the Commission from considering these earnings in determining Mr. Cramer's post-injury earning capacity. Moreover, such evidence is sufficient to support the award of the Commission that Mr. Cramer has a 41.1% loss of earning capacity.

For the foregoing reasons, the award of the Commission is affirmed.

EUBANK, P. J., and HAIRE, J., concur.