514 P.2d 747

Ivan D. GERMANY, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Websters Meadow Gold Dairy, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 786.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 19, 1973.

Rehearing Denied Oct. 23, 1973.

Davis & Eppstein, by Robert W. Eppstein, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, by George B. Morse, Tucson, for respondents employer and carrier.

## OPINION

JACOBSON, Chief Judge, Division 1.

This review of an award of the Industrial Commission presents the difficult problem of determining the loss of earning capacity of an injured workman whose injuries are such that he is physically unable to return to his former employment but are not severe enough to make him physically unemployable.

On January 18, 1969, petitioner Ivan D. Germany was injured while in the course and scope of his employment as a milk delivery man. He was 33 years old at this time. His injuries consisted of a back condition involving a deteriorated disc. Because of his weight (approximately 280 pounds) surgery was considered quite hazardous, with a small chance of success and was not recommended.

Petitioner's condition was determined to be stationary with a ten percent general disability. His average monthly wage at the time of his injury was found to be $803.00. The Commission initially determined that petitioner was employable for light bench work, light delivery work and as an attendant at a self service gas station. The Commission further determined that he could earn approximately $300 per month, settled petitioner's loss of earning capacity at 53.63% and awarded him $237.-02 per month as an award for unscheduled permanent partial disability. This award

was protested by a request for a hearing. Following the hearing, the hearing officer found that petitioner was employable as a motel clerk, that such employment was available in the Tucson, Arizona area (the place of petitioner's residence) and established petitioner's loss of earning capacity at 65.49%. This decision was affirmed by the Commission and review was sought in this court by writ of certiorari contending that petitioner in fact has a 100% loss of earning capacity.

Petitioner's attack in this court on the award of the Industrial Commission is two-fold, that is, the procedural manner in which the loss of earning capacity is determined, and whether the evidence in this case supports the Commission's determination of a partial loss of earning capacity only.

Petitioner's procedural attack is based upon the manner in which the Commission initially makes an *ex parte* determination of loss of earning capacity and the lack of meaningful discovery to be able to meet testimony of the employment expert who will testify as to job availability.

Petitioner contends that the procedure followed in his case places petitioner in what he categorizes as a dilemma. The Commission initially issued its award on June 29, 1971, finding that petitioner was capable of performing the duties necessary to perform light bench work, light delivery work and work as an attendant in a self service gas station. Based upon that finding, the Commission found that petitioner had a loss of earning capacity of 53.63%. Petitioner first complains that because these findings were made prior to any hearings, he is unable to discover the source of this information and thus unable to challenge this finding.

Petitioner then petitioned for a hearing of the initial Commission award. From sources in the carrier's file, petitioner was able to ascertain that the carrier was of the opinion that petitioner could perform the duties of a parking lot attendant or night watchman. Petitioner argues that at

this point in the proceedings he is capable theoretically of proving that either he is physically unable to perform these jobs or that they actually pay less than the Commission found or they are unavailable and therefore the award of the Commission is erroneous. However, petitioner's argument continues, his dilemma is compounded by the fact that at the hearing the carrier's employment expert is allowed to testify as to *other* available employment, which employment information came to the attention of the expert only four or five days prior to the hearing, and is, thus, for all practical purposes, undiscoverable and the claimant is unable to overcome it.

■ Insofar as the initial *ex parte* determination by the Commission of the loss of earning capacity is concerned, such procedure is authorized by A.R.S. § 23–1047, which in pertinent part provides:

"In cases of permanent partial disability . . . when the physical condition of the injured employee becomes stationary . . . the employer or insurance carrier shall notify the commission and request that the claim be examined and further compensation, if any, be determined.

\* \* \* \* \* \*

"Within thirty days . . . the claims shall be examined and further compensation, including permanent disability award, if any, *determined under the commission's supervision.*" (Emphasis added.)

The determination made by the Commission is in accordance with the criteria set by A.R.S. § 23–1044, subsec. D and is based upon medical reports and other information deemed pertinent by the Commission. Since such a procedure is statutorily authorized, and since, as a practical matter, an initial starting point must at some time be established, we find no defects in this procedure.

The problem of lack of meaningful discovery presents a more difficult problem —the problem having been noted but not decided in the recent decision of Depart-

ment A of this court in Diaz v. Industrial Commission, 20 Ariz.App. 174, 511 P.2d 187 (1973).

■ The problem arises, of course, from the conflicting positions of the parties. On the one hand, in keeping with the spirit of advocacy on facts rather than surprise, the injured workman should be supplied with all the factual data necessary to properly prepare and defend his position. On the other hand, assuming a good faith effort has been shown by the claimant to obtain employment, the carrier is placed in the position of going forward with the proof of "available suitable employment" for the claimant. Davis v. Industrial Commission, 16 Ariz.App. 535, 494 P.2d 735 (1972). Inherent in the *availability* of the work is a time and space limitation. Thus, the "freshness" of the information supplied at the hearing is of prime importance. In this regard, petitioner contends that the point in time for determining loss of earning capacity should be the date the workman's physical condition becomes stationary and evidence of job availability after that date should be stricken. We reject this contention on the basis that such a narrowing of the meaning of the word "available" is not called for by the case law and may in the long run act to the detriment of the injured workman contrary to the underlying philosophy of the Workmen's Compensation Act. When we consider that the date the injured workman's condition becomes stationary may proceed by at least thirty days and possibly ninety days the initial determination of loss of earning capacity, A.R.S. § 23–1047, subsec. B, and that an additional sixty days may elapse before a hearing is requested and additional delay is most certainly to occur before the hearing is held, a possible time lapse of six to eight months may occur between the date the condition became stationary and the date of hearing. To allow the carrier to show that a job was available six months ago, but preclude the workman from showing that the job is not now available, is to lock the injured workman

into a loss of earning rate not commensurate with his true loss.

■■ In our opinion, it would be improper to fix a definite point in time to show the availability of employment. The availability of employment must, by the very nature of the inquiry, remain flexible. The evidence of "availability", however, must as with all evidence be material. To determine the materiality of the evidence it must bear a reasonable time relationship to the point of inquiry. What this time relationship might be depends upon the facts of the particular case including the type of employment which it is contended is available and its history of availability in the area, but it goes without saying that the closer in time the evidence of job availability relates to the point of inquiry, the more material the evidence would become.

In our opinion, the balancing of the conflicting goals of proper defense and the freshness of information is best solved by the liberal granting of continuances by the hearing officer to enable the injured workman to meet, if necessary, the evidence presented as to the jobs which are considered fit for the claimant and their reasonable availability.

This may not be of any solace to the petitioner here for he did not request such a continuance to enable him to meet the offered testimony of the Fund's employment expert.

■ We hold, however, that the procedural aspects of the loss of earning determination employed by both the Commission and the hearing officer were proper.

Turning now to the issue of whether the evidence supports the Commission's determination that petitioner suffered only a partial loss of earning capacity, it is necessary to detail additional facts. Before doing so, however, it is important to point out that petitioner does not contend that the 10% functional disability rating found by the Commission is incorrect, nor does he contend that his present physical condition precludes him from any type of employment.

This was verified by his treating physician who testified that he was employable, provided that the work activity he engaged in allowed petitioner to change positions quite frequently, involved no heavy lifting and there were no extended periods of bending over. This physician, after being fully informed of the factual nature of the various jobs and the physical activity normally associated with these jobs, testified that in his opinion, the petitioner had the physical capabilities to adequately perform as a guard where he could walk around, as a self-service gas station attendant and as a motel room clerk, if not required to carry bags.

Ross Lamoreaux was called by the carrier as an expert employment specialist, and testified he had interviewed the petitioner, and ascertained his educational employment background and was familiar with petitioner's physical limitations related to his industrial injury. Mr. Lamoreaux testified that petitioner was employable as a parking lot attendant, as a security guard and as a motel room clerk. He further testified as to the hourly rate of compensation for each of these jobs based upon the going wage rate in 1969 and as to the availability of these types of employment in the Tucson area. He further testified that his opinion as to the availability of such employment was based on reviewing microfilm lists kept by the Arizona Employment Service and by reviewing and checking local newspaper job advertisements. This basis for the expert's opinion as to availability was strenuously objected to by petitioner on the grounds of hearsay.

This then reaches the crux of petitioner's argument—that there was no testimony that a single employer would hire the petitioner and that the availability of employment was based upon hearsay.

■ Turning to the hearsay objection first, we have held that where the nature of the witness's testimony is opinion, the fact that that opinion is based upon hearsay, that is, sources not subject to cross-examination, goes to the weight to be given that testimony, rather than its admissibility. State v. Anderson, 20 Ariz.App. 309, 512 P.2d 613 (1973).

■ The contention that the carrier must present evidence that there is open and waiting a job for this particular workman, taking into consideration not only his industrially-related physical condition, education, occupational history, the type of work he is able to perform and such related factors, but also such intangibles as his personal appearance, his motivations for work, his temperament and personality, is rejected. If petitioner's contention were followed to its logical conclusion, the carrier would be forced to become an employment agent—having available a specific employer ready, willing and able to hire this specific employee. Such a result is not required by our statutes or case law. This court recently had occasion to comment on the conceptual basis of employability in a loss of earning situation in the case of Cramer v. Industrial Commission, 19 Ariz.App. 379, 507 P.2d 991 (1973):

> "In reality, the concept of an entity consisting of the 'open labor market' or the 'competitive labor market' is a legal fiction which is used in the sense that there exist employers, ready, willing and able to hire each and every individual who presents himself for employment.
>
> \*  \*  \*  \*  \*  \*
>
> "In using this verbalized concept, what courts are attempting to ascertain is to what extent a workman's injuries, by themselves and acting alone, affect his or her ability to earn a living, taking into consideration his or her non-injury attributes such as education, skills, training, etc." Id. at 993.

■ If the carrier presents evidence that there is employment reasonably available which the claimant could reasonably be expected to perform, considering his physical capabilities, education and training, we hold that the carrier has met its burden of showing an earning capacity.

From the evidence presented in this case, we find it supports the Commission's determination that the petitioner suffers a 65.49% loss of earning capacity.

The award is affirmed.

EUBANK, P. J., and HAIRE, J., concur.