530 P.2d 914

**Norman K. DYE, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Superlite Builders, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier,**

**No. 1 CA–IC 795.**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 21, 1975.

Gorey & Ely by Joseph M. Bettini, Phoenix, for petitioner.

Edward F. Cummerford, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, State Compensation Fund by Courtney L. Varner, Phoenix, for respondent employer and respondent carrier.

## OPINION

HAIRE, Chief Judge.

On this review by certiorari the petitioner questions the sufficiency of the evidence to support the Commission's finding which limited his loss of earning capacity to 63.-78%.

As a result of his industrial injury the petitioner had lost his left thumb and a portion of his left leg by a below-the-knee amputation. Petitioner particularly complains of that portion of the Commission's findings which found that:

" . . . with a reasonable amount of effort applicant [petitioner] should be able to obtain light type employment based upon a 40 hour week at $1.40 an hour, which would provide him with an average monthly wage of $242.65 based upon salaries existent at the time of his injury."

Petitioner's contentions on appeal are best set forth in his reply brief as follows:

"It is not our position that the petitioner is unemployable. It is entirely possible, as found by the Referee, that petitioner may 'occasionally' be employed.

"Our position, simply, is that it is illogical to conclude that the [petitioner] can 'odd job' it around in various fields, and still work eight hours per day, five days per week, fifty-two weeks per year as found by the Referee."

The reference to the referee's finding that petitioner might "occasionally" be employed is based upon a portion of the referee's finding 1(g) which was adopted as a portion of the Commission's finding 3(g), as follows:

"However, evidence indicates that work occasionally becomes available as a parking lot attendant, night watchman, security guard, light bench work, work in self service gas stations, and answering telephones, which at the time of injury would have paid a salary of $1.40 an hour."

If the referee's use of the word "occasionally" in his finding is interpreted to mean that petitioner is able to engage in full time continuous work and that the evidence indicates that full time work of a nature indicated is "occasionally" available to him, then we hold that the evidence does not support such a finding. On the other hand, if the finding is interpreted as suggested by the petitioner, then we find a basic inconsistency in the referee's finding of work becoming occasionally available, and the conclusion that such work would be

available to petitioner on a full time, 40 hour per week, 52 week per year basis.

It would serve little purpose to set forth the evidence in detail in this decision. Suffice it to say that we have reviewed the record and agree with petitioner that while the evidence does support the Commission's finding that work of the nature described does become "occasionally" available, the evidence will not support the Commission's finding that such work would be available to a person with petitioner's disabilities on a full time 40 hour per week, 52 week per year basis.

The award is set aside.

EUBANK, J., concurs.

JACOBSON, Presiding Judge (specially concurring):

I agree that the award entered in this matter must be set aside. However, I would do so on a basis different than my colleagues. The majority opinion in this matter fastens upon the word "occasionally" as it appears in the referee's findings and concludes that having found that work "occasionally becomes available" it is improper to find an earning capacity based upon full time employment.

To me this is a distinction without a meaning. The evidence in this case dealing with earning capacity does not differ in any material aspect from the evidence in numerous cases upon which the commission has based a full time earning capacity; albeit, without the finding that the work "occasionally" becomes available. Thus, to me, it is the evidentiary basis upon which the earning capacity determination is made that must, in the first instance, be analyzed. Upon such an analysis, I disagree that "the evidence does support the commission's finding that work of the nature described does become 'occasionally available' " as found by the majority.

Because of my analysis of this problem, an evidentiary setting is required.

In December, 1967, the petitioner, Norman K. Dye, suffered a traumatic amputation of his left thumb and severe injuries to his left foot and leg which subsequently resulted in the amputation of his left leg below the knee. The petitioner was fitted with a prothesis, but the results have not been entirely satisfactory and he is limited in his ability to walk.

Following his injuries, petitioner was employed for a short period of time at a gas station, but could not keep this job because he moved too slowly and got blisters on his stump. He was also employed as night watchman for approximately 9 days but this employment terminated when the firm moved to another city. Petitioner has sought employment through his union, through Arizona State Employment Service, at Goodwill Industries, at Western Cotton Products and through State Rehabilitation. At the time of the hearing on the issue of his earning capacity, the petitioner was unemployed.

At this hearing the carrier presented evidence through the expert who designed and fitted the prothesis worn by petitioner that petitioner could perform the duties of a night watchman and of a parking lot attendant. The carrier also presented evidence through Ross Lamoreaux, an employment expert, as to the availability of work as a night watchman, parking lot attendant, messenger and light delivery work, and as a cashier in a self-service gas station. Based upon this evidence the hearing officer found that petitioner had an earning capacity of $242.65 per month.

The test that is simple to state and is universally applied in determining loss of earning capacity is:

" . . . to determine as near as possible whether in a competitive labor market the subject in his injured condition can probably sell his services and for how much." Davis v. Industrial Commission, 82 Ariz. 173, 175, 309 P.2d 793,

795 (1957). *See also,* 2 Larson's Workmen Compensation Law, § 57.51; p. 10–119 (1974).

The test is based in part upon the realization that the best evidence of earning capacity is the amount the claimant is earning after his industrial injuries. Maness v. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967); Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959). If the answer to this evidentiary question is none, two lines of inquiry are immediately presented: (1) is this lack of employment due to claimant's injuries, or (2) is the lack of employment due to the reluctance of the claimant to seek work.

The burden, initially, to show that this lack of employment is because of his industrially related injuries is on the claimant. Spears v. Industrial Commission, 20 Ariz.App. 406, 513 P.2d 695 (1973); Edmiston v. Industrial Commission, 92 Ariz. 179, 375 P.2d 377 (1962). Generally, the claimant can meet this burden by showing that his industrial injuries incapacitated him from engaging in his prior employment, that the injuries are permanent in nature, and that he has made a good faith, unsuccessful effort to seek other employment in the area of his residence. Meadows v. Industrial Commission, 12 Ariz.App. 114, 467 P.2d 954 (1970). It is important to note at this juncture that if the hearing officer is satisfied as to the bona fides of the claimant's efforts to seek employment, which have been unsuccessful, he may, at least theoretically, eliminate from his consideration one of the inquiries flowing from the fact of unemployment—the reluctance of the claimant to seek employment. What evidentiary basis must exist to show those bona fides as to effort, of course, depends on the facts of each case, but should include among other factors, consideration of the extent of the injuries, the conscientiousness with which employment was sought, and the spectrum of jobs available in the area of his residence.

If the hearing officer concluded that the claimant has proven that a loss of earning capacity exists, that is, that the injuries are such that he is unable to perform his pre-injury employment, but concludes that his efforts to secure employment have not been conscientious, he may properly, I believe, conclude the claimant has failed to sustain his burden and set the loss of earning capacity as that determined by the Commission under A.R.S. § 23–1047(B). If, however, the claimant has met his entire burden, the burden of then going forward with the evidence to show that suitable employment is available and thus the claimant has an earning capacity shifts to the parties contending that earning capacity exists. Meadows v. Industrial Commission, *supra.* We recently held in Germany v. Industrial Commission, 20 Ariz.App. 576, 514 P.2d 747 (1973) that the party contending earning capacity exists meets its burden of going forward with the evidence:

> "If [that party] presents evidence that there is employment *reasonably available* which the *claimant could reasonably be expected to perform,* considering his physical capabilities, education and training . . .." 20 Ariz.App. at 580, 514 P.2d at 751. (Emphasis added.)

What I have stated to this point appears to be fairly well settled law. I would now deem it pertinent to ascertain what evidence is *material* in determining what is "reasonably available employment that the claimant could reasonably be expected to perform." I first note that the trier of fact must make two determinations in this regard: (1) is the employment suggested the type that the claimant "could reasonably be expected to perform" and (2) is that employment "reasonably available."

I will discuss the type of evidence which, in my opinion, is material to these two inquiries. In this discussion I will assume that a particular employment has been suggested that the claimant is capable of fulfilling. In determining whether the claim-

ant can "reasonably be expected to perform" that employment the following foundational factors at a minimum, in my opinion must be shown: (1) the physical requirements of the particular employment under discussion; in this regard I would deem abstract requirements to be insufficient foundation to meet the test of materiality—i. e., "a night watchman walks around and punches a time clock"—but that specificity is required—i. e., "a night watchman at XYZ Corporation is required to walk a distance of 100 yards every hour, that the 100 yards is in a four-story building without elevators, and there are 350 steps to climb, etc."; (2) what education or training is required for the suggested employment; again, in my opinion, abstractions are not sufficient—i. e., "night watchmen must only know how to operate a time clock"—but that specificity is again required—i. e., "night watchmen at XYZ Corporation are expected to have a background in law enforcement or related investigative training."

Without the necessary specificity as to the particular employment suggested I am unable to see how the trier of fact can relate that particular employment to the claimant's capabilities, both physical and mental. Even in those occupations which are more or less self-explanatory, such as the ubiquitous cashier at a self-service gas station, such environmental factors as whether the space occupied by the employee is enclosed (from heat or cold) may be material in whether the claimant's physical condition would permit him to fill that position.

As to whether the employment is "reasonably available," likewise specificity is required for materiality. First, there must be material evidence that the employment is "reasonably available." Thus testimony that " 'X' number of jobs as a dishwasher are available in the Phoenix area a month" is meaningless unless there is some indication as to the number of individuals seeking that employment. If there are 50 openings for a dishwasher which are drawing 5,000 applicants, it cannot be said that one chance in a hundred makes the job "reasonably available."

Second, it will be material in determining earning capacity to show that the particular employment is, at least historically, permanent in nature and not occasional or intermittent and whether it is full or part time.

Third, and possibly most importantly, evidence as to the history of a particular employer hiring handicapped or previously industrially injured workmen is most material. As was stated in Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396 (1935):

"   . . .   The commission should consider not only the actual impairment of the physical and mental capacity of the injured person to do the work, but whether and to what extent his injury is likely to deprive him of the ability *to secure the work* which he might do if he were permitted to attempt it." 46 Ariz. at 191, 49 P.2d at 402.

While other evidence may be material, what I have attempted to catalog are those evidentiary facts which, in my opinion, must be shown as a bare minimum in order for the trier of fact to reach a determination of earning capacity.

The specificity which I would hold must be shown in order for evidence to be material, does require field investigation by the proponent of earning capacity. Such a requirement, however, has not been shown to be impossible of fulfilling as indicated by the federal social security cases on the subject of loss of earning capacity. *Cf.* Gardner v. Earnest, 371 F.2d 606 (4th Cir. 1967); Duncan v. Railroad Retirement Board, 375 F.2d 915 (4th Cir. 1967). I would not require, however, in order to satisfy specificity that the carrier be an employment agency and find the claimant a job. What I would now require is that there be a *factual* showing of job availability for persons of the claimant's limited

abilities. *See* Fedor v. Celebrezze, 218 F. Supp. 667 (E.D.Pa.1963).

Applying the criteria that I have set forth in this opinion to the facts in this case, I would hold that there is simply no material competent evidence before the Commission which would justify any award as to earning capacity. For example, the vocational expert testified that watchman positions were available (63 in October and 17 in November) but was unable to testify as to the amount of walking required or whether petitioner could fulfill them, or how many applicants were seeking these jobs. Likewise, he testified as to parking lot jobs which required nothing but making change (no walking) and that 23 positions were open in October and 60 in November. Again, no attempt was made to show the number of applicants for these jobs, whether they were temporary or permanent in nature, or whether employers filling these jobs would hire previously industrially injured persons. In short, my reading of the evidence in this case does not, in my opinion, rise to the level of competent, material evidence which would support any award as to earning capacity. LaRue v. Industrial Commission, 20 Ariz.App. 498, 514 P.2d 251 (1973).

Finally, I note that the vocational expert is in essence the employer's answer to the shift of burden of proof. I further note that while the guidelines which I would propound by this concurring opinion may, at first, seem burdensome, I am convinced that they establish a fair and just standard. Admittedly, the injured workman should not be allowed to sit back idly and collect compensation when he could hold down a regular job requiring lesser abilities, but if an employment specialist is used to meet the employer's burden, then it must be done properly with a reasonable assurance that his testimony is accurate and material.

For the foregoing reasons, I would set aside the award of the Commission based upon the views expressed in this concurring opinion.