537 P.2d 599

**Paul C. DEAN, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**A–I Cabinet Shop, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. I CA–IC II03.**

Court of Appeals of Arizona,
Division 1,
Department C.

July 1, 1975.

Rehearing Denied July 30, 1975.

Review Granted Oct. 14, 1975.

Gorey & Ely by Joseph M. Bettini, Stephen L. Weiss, Phoenix, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Courtney L. Varner, Phoenix, for respondents employer and carrier.

## OPINION

WREN, Judge.

This review by certiorari questions the sufficiency of the evidence to support an Industrial Commission award limiting petitioner's loss of earning capacity to 32.37 percent.

On June 12, 1970, petitioner, Paul Dean, while lifting a cabinet, sustained an industrial injury diagnosed as a lumbosacral strain. On September 27, 1973, the Commission entered an award finding that petitioner had sustained a ten percent general physical functional disability as a result of his industrial injury; and that he had sustained a 32.37 percent reduction in earning capacity attributable thereto. The award was affirmed by the Commission on review and petitioner thereafter filed a petition for writ of certiorari with this Court.

Petitioner's argument is as follows. A well established precept is that impairment of earning capacity is presumptively determined by comparing preinjury earnings with post-injury earnings. Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959); State Compensation Fund v. Diaz, 19 Ariz.App. 328, 507 P.2d 130 (1973); Turley v. Industrial Commission, 10 Ariz.App. 21, 455 P.2d 470 (1969); Gutierrez v. Industrial Commission, 8 Ariz. App. 477, 447 P.2d 569 (1968). This pre-

sumption is not conclusive, and can be rebutted by evidence showing that post-injury earnings do not accurately reflect the workmen's earning power. *See* Barnard v. Industrial Commission, 91 Ariz. 1, 368 P.2d 749 (1962); Allen, *supra;* White v. Industrial Commission, 82 Ariz. 120, 309 P.2d 250 (1957). However, petitioner asserts that in this case, his post-injury earnings accurately reflected his earning ability and therefore, the presumption should have been applied. He points out that following his injury and release for work, he obtained a job through the Arizona State Employment Service as a floorman, waxing floors, which paid approximately three hundred dollars per month. Applying the presumption, his post-injury earnings from his job—adjusted back to the time of his injury, Whyte v. Industrial Commission, 71 Ariz. 338, 227 P.2d 230 (1951), when compared with his preinjury average monthly wage of $591.00, shows his loss of earning capacity to be greater than 32.37 percent.

Petitioner asserts that the hearing officer erroneously found the presumption to be rebutted, and additionally, petitioner's earning capacity to be established, by the testimony of an employment specialist that work was available to petitioner as a pest control serviceman. According to the employment specialist, the present salary for this type of work was in excess of $500 per month, which at the time of petitioner's injury, would have paid $400 per month.

Respondents assert that petitioner's earning capacity was based not only on the Commission's finding that petitioner could work as a pest control serviceman, but also its findings that petitioner could do both janitorial work and the same type of work he was doing at the time of his injury.

From our review of the Commission's findings, we think it is unclear whether the hearing officer found that petitioner could either secure work of the same type he was doing at the time of his injury, or perform or secure janitorial work. However, we do not think it necessary to consider that question here. It does appear that the hearing officer based his determination of petitioner's earning capacity principally on the pest control serviceman's job. The adjusted wage of that job compared with petitioner's preinjury monthly wage computes exactly to a 32.37 percent reduction in earning capacity. We think the Commission's finding with respect to the availability of this job is dispositive of this appeal.

Petitioner's argument pertains to the burden placed on the employer once the testimony discloses a satisfactory effort on the part of the disabled workman to secure employment. Once this initial burden has been met by the workman, the burden of going forward with evidence to show the fact of available suitable employment shifts to the carrier. Meadows v. Industrial Commission, 12 Ariz.App. 114, 467 P.2d 954 (1970). Petitioner asserts that the carrier did not meet its burden, in that even though petitioner might be able to physically perform the job of a pest control serviceman—which we find the medical record amply supports, there was no testimony that petitioner could obtain such a job. Petitioner cites Ossic v. Verde Central Mines, 46 Ariz. 176, 191, 49 P.2d 396, 402 (1935), wherein it was stated:

"[T]he commission should consider not only the actual impairment of the physical and mental capacity of the injured person to do work, but whether and to what extent his injury is likely to deprive him of the ability *to secure the work* which he might do if he were permitted to attempt it." (Emphasis added).

Petitioner's contention that his ability to secure work has been impaired by his injury is based on his reasoning that employers are universally reluctant to hire a man with an injured back when they can just as easily obtain one with a normal back.

Though petitioner's assumption may be unfounded, we will assume for the moment its correctness. Petitioner has not pointed out to us what specific type of testimony he would deem as being sufficient to dispel

this prejudice against a disabled or previously industrially injured workman. However, he does state that Judge Jacobson's concurring opinion in Dye v. Industrial Commission, 23 Ariz.App. 68, 530 P.2d 914 (1975), should be given effect here. In *Dye,* Judge Jacobson laid down what he considered to be essential evidentiary facts for determining whether work is "reasonably available" to a disabled workman. According to Judge Jacobson, in determining whether the effects of an injury affect the workman's ability to secure work, "evidence as to the history of a particular employer hiring handicapped or previously industrially injured workmen" is essential.

In our opinion, the foregoing "test" has little, if any, probative value in establishing a disabled workman's present ability to secure employment with a particular employer. The test's deficiency lies in its narrowness; it ignores the multitude of variables both injury related and non-injury related that are necessarily considered by an employer in hiring an employee. As noted in Cramer v. Industrial Commission, 19 Ariz.App. 379, 381, 507 P.2d 991, 993 (1973), in regard to the effect of non-injury related factors:

> "The availability of employment for a particular individual has always been restricted by such considerations as education, training, past experience, availability of jobs involving particular skills, work habits, personality characteristics, and a myriad of other factors."

To make accurate comparisons and generalizations based upon an employer's hiring history would necessitate consideration of all these variables—a fact which we believe makes consideration of an employer's hiring history, in most cases, unrealistic.

In essence, the only conclusive way to establish that a workman's injury will not impair his ability to secure employment is to actually secure for that workman an employer ready, willing and able to hire that specific employee. The contention that the carrier has such a burden was re-jected by this court in Germany v. Industrial Commission, 20 Ariz.App. 576, 514 P.2d 747 (1973).

■ As pointed out in Cramer, *supra,* 19 Ariz.App. at 381, 507 P.2d at 993, the ultimate objective in determining loss of earning capacity is to ascertain "[t]o what extent a workman's injuries, by themselves and acting alone, affect his or her ability to earn a living, taking into consideration his or her non-injury attributes such as education, skills, training, etc." In our opinion, determining one's ability to obtain employment essentially requires a balancing of the workman's attributes and medical condition, with the economic conditions. The burden on the carrier in showing available work may be greater in one case than in another, depending on any one or the sum of these factors. A good illustration of where a particularly heavy burden may be placed on a carrier to show available work is Ossic, *supra,* where a workman's face was badly disfigured as a result of his industrial injury. Though the disfigurement may not have affected the workman's ability to perform certain work, it clearly impeded his chances for securing employment. However, we do not see the situation in *Ossic* as akin to the situation herein.

■ In determining petitioner's earning capacity, the hearing officer considered the fact that petitioner was approximately twenty-eight years old, and that he had received no college education or technical training. Robert Kanaley, an employment specialist with the State Compensation Fund, testified as to the availability of work as a pest control serviceman. He stated that in determining the availability of jobs, he looks at listings put out daily by the Employment Security Commission, and the "want ads" in the newspapers. He noted that pest control serviceman jobs appear with frequency, and that no special training is required for this type of work.

We agree that the number and frequency of job offerings in a particular line of

work can, in many instances, be an accurate barometer of availability of employment in that line of work. *But see* Dye, *supra*, 530 P.2d at 918 (concurring opinion). Further statistical analysis of the job market as to pest control serviceman work was not necessary here.

In our opinion, there is substantial evidence in the record showing that pest control work was reasonably available to petitioner and that he was physically capable of performing it. Accordingly, the Commission's finding that petitioner had a 32.-37 percent reduction in earning capacity must be sustained.

The award is affirmed.

NELSON, P. J., and STEVENS, J., concur.