508 P.2d 46

**William F. RODGERS, Petitioner,**

**v.**

**INDUSTRIAL COMMISSION of Arizona,
Respondent,**

Allison Steel Manufacturing Company,
Respondent Employer,

State Compensation Fund, Respond-
ent Carrier.

No. 10700–PR.

Supreme Court of Arizona,
In Banc.

March 29, 1973.

Gorey & Ely, by Stephen S. Gorey, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent, The Industrial Commission of Arizona.

Snell & Wilmer, by Burr Sutter, Phoenix, for respondent Employer Allison Steel Manufacturing Co.

Robert K. Park, Chief Counsel, by Harlan J. Crossman, Phoenix, for respondent carrier State Compensation Fund.

LOCKWOOD, Justice:

The issue presented by this case is essentially one involving successive scheduled injuries to the same extremity under A.R. S. § 23–1044.[1]

1. The provisions of A.R.S. § 23–1044 pertinent to this case are:

"B. Disability shall be deemed permanent partial disability if caused by any of the following specified injuries, and compensation of fifty-five per cent of the average monthly wage of the injured employee * * * shall be paid for the period given in the following schedule:

\* \* \* \* \*

"7. The loss of more than one phalange of the thumb or finger shall be considered as the loss of the entire finger or thumb, but in no event shall the amount received for more than one finger exceed the amount provided for the loss of a hand.

\* \* \* \* \*

The pertinent facts are as follows: In 1964, the claimant petitioner William F. Rodgers suffered his first industrial injury consisting of the loss of two of the fingers and the ulnar half of the palm of his right hand. This first injury resulted in a Commission award of scheduled benefits under A.R.S. § 23–1044, subsec. B for a 45 per cent functional loss of use of the right hand. As a result of a subsequent industrial injury in 1968 Rodgers suffered a 20 per cent functional loss of use of one of the remaining fingers of the same hand. This loss of use resulted in a Commission finding that the petitioner had suffered a permanent partial disability equivalent to an additional 4 per cent functional loss of use of the right hand and a scheduled award was made for this additional loss of use pursuant to the provisions of A.R.S. § 23–1044, subsec. B, par. 21.

The question before this Court is not the Commission's finding of an additional 4 per cent functional loss of the use of the right hand. The petitioner, rather, contends that the additional injury to his right hand, being a second successive "scheduled" injury, was required to be treated by the Commission as "unscheduled" under A.R.S. § 23–1044, subsec. C, thereby necessitating benefits being awarded in accordance with the petitioner's factually deter-mined actual loss of earning capacity instead of in accordance with the fixed schedule of benefits set forth in A.R.S. § 23–1044, subsec. B. Conversely, the respondents contend that when the combined result of the first and second injuries produces a disability which is still encompassed within a specifically scheduled classification of A.R.S. § 23–1044, subsec. B, the second successive scheduled injury must be treated as scheduled. We agree with the petitioner.

The petitioner properly contends that there is a line of cases that hold that when a workman receives two successive scheduled injuries, the award must be unscheduled. See Ronquillo v. Industrial Commission, 107 Ariz. 542, 490 P.2d 423 (1971); Woods v. Industrial Commission, 91 Ariz. 14, 368 P.2d 758 (1962); Hurley v. Industrial Commission, 83 Ariz. 178, 318 P.2d 357 (1957); Crowder v. Industrial Commission, 81 Ariz. 396, 307 P.2d 104 (1957); Morris v. Industrial Commission, 81 Ariz. 68, 299 P.2d 652 (1956); McKinney v. Industrial Commission, 78 Ariz. 264, 278 P.2d 887 (1955); Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396 (1935); Meador v. Industrial Commission, 2 Ariz.App. 382, 409 P.2d 302 (1966).

The petitioner contends that the provisions of A.R.S. § 23–1044, subsec. E

"12. For the loss of a major hand, fifty months, or of a minor hand, forty months.
*     *     *     *     *
"20. The permanent and complete loss of the use of a * * * hand * * * may be deemed the same as the loss of any such member by separation.
"21. For the partial loss of use of a * * * hand * * * fifty per cent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of use of such member, * * * which the partial loss of use thereof bears to the total loss of use of such member * * *.
*     *     *     *     *
"C. In cases not enumerated in subsection B of this section, where the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to

fifty-five per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability, but the payment shall not continue after the disability ends, or the death of the injured person, and in case the partial disability begins after a period of total disability, the period of total disability shall be deducted from the total period of compensation.
*     *     *     *     *
"E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.

demonstrate that the second injury should be treated as unscheduled. When the entire effect of the successive injuries results in disabilities which do not come within one of the scheduled classifications, there is no way that the resulting disability can be classified as scheduled and still give meaning and effect to A.R.S. § 23–1044, subsec. E.

As this Court said in the leading case of Ossic v. Verde Central Mines, supra:

"If the decrease of earning power caused by the loss of both feet is to be calculated by simple addition, compensation should be allowed for eighty months, while, as a matter of fact, the Legislature has again made such loss compensated for life. The same rule applies to the loss of one hand as compared to that of both hands. These facts are evidence that the Legislature has realized that in compensation cases two plus two does not necessarily equal four, but in some cases may equal six or more. We are of the opinion that this rule, which the Legislature has specifically adopted for certain classes of multiple injuries, is in logic and in justice the one which should be applied to all cases of such injuries, where another rule is not expressly set forth in the statute. In other words, that when the Legislature has scheduled several injuries to be compensated at a fixed rate when incurred separately, and several of such injuries are received at the same time, the commission must consider the total picture of all the injuries in computing the extent of the disability, rather than merely adding the amounts allowed for the several separate and distinct injuries. That the Legislature intended this method of procedure we think is evidenced by the following language occurring in section 1438, supra, [now § 1044(E)] after the statement of the various scheduled injuries and the compensation allowed therefor:

" 'Where there is a previous disability, as the loss of one eye, one hand, one foot, or any other previous disability, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.'

"By the terms of this provision, if two scheduled injuries are received at different times, the commission is directed to determine the entire disability as it exists after the second injury, and in apportioning the compensation for which the last employer is responsible, to deduct the percentage of the first disability from the total disability as it existed after the subsequent injuries. If the complete effect is the test when the injuries are received separately, we see no reason why it should not be the same when they are received simultaneously." 46 Ariz. at 188–189, 49 P.2d at 401–402.

In the instant case the Commission found a 45 per cent residual impairment of the right hand from the first injury. It should therefore have determined the entire disability as it existed after the second injury, and deducted the percentage of the first disability from the total disability as it existed after the subsequent injury and thereafter determine the loss of earning capacity as an unscheduled award.

The opinion of the Court of Appeals, 15 Ariz.App. 329, 488 P.2d 685 (1971) is vacated and the award of the Industrial Commission is set aside.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.