545 P.2d 965

**ALL STAR COACH, INC. and Home Insurance Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Sarah Camacho, Respondent Employee.**

**No. I CA–IC 1344.**

Court of Appeals of Arizona, Division 1, Department C.

Feb. 13, 1976.

Rehearing Denied March 12, 1976.
Review Granted March 30, 1976.

Everett, Bury & Moeller, P. C. by J. Michael Moeller, Tucson, for petitioners.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Gilbert Gonzalez, Tucson, for respondent employee.

## OPINION

NELSON, Presiding Judge.

This case presents one question for decision: may an injury which results from an accident which itself occurred prior in point of time to another accident also resulting in an industrial injury, be a "subsequent injury" for purposes of A.R.S. § 23–1044 E, so as to result in a general or unscheduled disability when the two injuries, otherwise scheduled in nature, are combined? The hearing officer answered this question in the affirmative and awarded an unscheduled permanent partial award. We agree and affirm the award.

The operative facts in the case are not in dispute. Although this matter has been before this Court earlier, *Camacho v. Industrial Commission of Arizona*, 20 Ariz. App. 225, 511 P.2d 669 (1973), that cause involved a prior non-industrial injury as it might have impacted on one of the injuries

**4**

here in question, and is of only historical interest as regards the present factual situation.

On October 3, 1969, the respondent employee, Sarah Camacho (Camacho), suffered an injury to her right knee while employed by All Star Coach, Inc. (All Star), one of the petitioners here. The claim was accepted for benefits by the Home Insurance Company (Home), the carrier for All Star and also a petitioner here. Camacho's condition became medically stationary as a result of the October 3, 1969 injury on April 23, 1974. The insurance carrier issued a notice of claim status on April 29, 1974, terminating temporary compensation and active medical treatment because Camacho was discharged with permanent partial disability amounting to a scheduled 15% loss of use of the right leg. This notice was challenged on the basis of scheduled vs. unscheduled nature of the award, which we shall deal with infra, but there was no challenge at the Commission, nor is there one here, as to Camacho's 15% loss of use of her right leg. Without more, of course, the award would have been scheduled pursuant to A.R.S. § 23–1044 B(15) and (21). There is more.

On October 21, 1969, Camacho suffered an industrial accident which resulted in an award entered on October 28, 1971, for a 40% loss of use of her left (major) hand, another scheduled injury, pursuant to A.R.S. § 23–1044 B, supra, subsections (12) and (21).

■ While recognizing that the statutes and decisional law of this jurisdiction quite clearly mandate that two successive scheduled industrial injuries require that the second injury be treated as unscheduled (A.R.S. § 23–1044, supra, sections C, D, E and F; *Rodgers v. Industrial Commission*

*of Arizona,* 109 Ariz. 216, 508 P.2d 46 (1973) and cases cited therein), counsel for the employer and carrier urges that the injury before us in this cause is the first injury, and therefore cannot possibly be an unscheduled award in accordance with the plain language of A.R.S. § 23–1044 E, supra.[1] While this construction of the statute might be possible from a literal reading of that portion of the statute standing alone, when it is read in conjunction with the rest of the statute, as required by the accepted canons of statutory construction (E.g., *Stuart v. Winslow Elementary School District No. 1, Navajo County,* 100 Ariz. 375, 414 P.2d 976 (1966)), as well as in conjunction with the decisions of the Arizona Supreme Court such as *Rodgers,* supra, and the cases cited therein, particularly *Ossic v. Verde Central Mines,* 46 Ariz. 176, 49 P.2d 396 (1935), it becomes clear that such a literal reading would result in absurd situations, clearly not contemplated by the Legislature. *State Board of Directors for Junior Colleges v. Nelson,* 105 Ariz. 119, 460 P.2d 13 (1969); *State ex rel. Church v. Arizona Corporation Commission,* 94 Ariz. 107, 382 P.2d 222 (1963).

■ We do not believe that the language of the Arizona Supreme Court in *Ossic v. Verde Central Mines,* supra, as set out and construed in *Rodgers v. Industrial Commission of Arizona,* supra, is susceptible of any construction or interpretation other than that adopted by the hearing officer:

"10. That as a result of the scheduled disability awarded in Case No. 9/7–30–39 [40% loss for use of left (major) hand], and the scheduled disability sustained in the instant case [15% loss of use of right leg], the applicant has sustained two scheduled industrial injuries, and is

1. A.R.S. § 23–1044 E:
"E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for *a subsequent injury* shall be determined

by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability *as it existed at the time of the subsequent injury.*" (Emphasis supplied)

therefore entitled to an award of unscheduled permanent partial disability. [Citations to *Rodgers,* supra and *Ossic,* supra, omitted]."

The fact that the accident involving the knee occurred 18 days before the accident involving the hand does not mean that the injury to the hand is forever *subsequent,* in terms of A.R.S. § 23–1044 E supra. Until the injuries are stationary, it is impossible to know whether either or both of them will be permanent, and thus subject to the provisions of A.R.S. § 23–1044, supra. *Morgan v. Industrial Commission of Arizona,* 21 Ariz.App. 526, 521 P.2d 157 (1974). On April 24, 1973, the injury to Camacho's knee became stationary and was held to result in a 15% loss of use of the right leg, a permanent injury, *Morgan,* supra. This is, in our view of the law, subsequent to the injury of October 21, 1969, which resulted in an October 28, 1971 award of a scheduled 40% loss of use of her left (major) arm, for purposes of A.R.S. § 23–1044 E supra.

In *Ossic* and *Rodgers,* supra, it was clearly the multiple effect, rather than the particular sequence of injuries, that was the key to the intent of the Legislature in compensating multiple scheduled injuries. In *Ossic* all the injuries occurred simultaneously. Our holding here is consistent with the intent of the Legislature as interpreted by the Arizona Supreme Court.

The award is affirmed.

SCHROEDER, J., concurs.

WREN, Judge (dissenting).

I cannot agree with the majority's interpretation of A.R.S. § 23–1044 E. The words "subsequent injury" have now been amended to read "subsequent award". How can it be asserted that such a strained construction was within the "intent of the Legislature"? The plain, unambiguous words of the statute provide that where there is a previous disability, "the percentage of disability for a *subsequent injury* shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability *as it existed at the time of the subsequent injury.*" (Emphasis added.) In my view, such language mandates that only the second injury *in time* may be treated as the unscheduled injury. Had the Legislature intended the result reached by this Court, it could easily have provided that the time of the award, rather than the injury, be determinative of which of two successive injuries would be treated as unscheduled.

While not squarely on point with the instant case, *Hurley v. Industrial Commission,* 12 Ariz.App. 162, 468 P.2d 613 (1970) presents a somewhat analogous situation, and, in my opinion, precludes the result reached in the majority opinion. In that case the claimant had sustained two nondisabling back injuries previous to an industrial injury to her hand. At the time of the award, however, the back injuries had become partially disabling. The question before the Court was whether the Industrial Commission correctly construed the law in finding that

". . . where the petitioner suffers a first injury which is not disabling and then suffers a second injury which is partially disabling and scheduled, after which scheduled disability the previous injury also becomes partially disabling, the Commission may not treat her resulting disabilities as unscheduled." 12 Ariz.App. at 163, 468 P.2d at 614.

The Court held that, although at the time of the award claimant's preexisting back condition was disabling, since this disability developed after the hand injury the Industrial Commission correctly awarded scheduled benefits. In other words, there was no "previous disability" at the time of the "subsequent injury".

*Rodgers v. Industrial Commission,* supra, relied upon by the majority decision as mandating the result reached, sets forth

**6**

the principle that the entire effect of successive disabling injuries must be considered by the Industrial Commission. However, that case involved a second injury after a scheduled award. Assuredly, that is the principle behind A.R.S. § 23–1044 E, but that principle must be applied in the manner set forth by the statute; that is, only a *subsequent injury* which would otherwise be scheduled can be treated as unscheduled. When the petitioner here received the industrial knee injury on October 3, 1969, she had not yet injured her hand. Therefore she could not have had a previous disability.

Although the result may not have been any different in this case regardless of the order of the injuries since the same employer and carrier were involved in both claims, in a case where two employers and carriers were involved, their liabilities could be affected by the order of the processing of the claims. If such is to be the result, it is the prerogative of the Legislature and not of this Court to so provide.

The words of the Supreme Court in *Kilpatrick v. Superior Court,* 105 Ariz. 413, 421, 466 P.2d 18, 26 (1970), are apropos here:

"There is no magic in statutory construction and no legal legerdemain should be used to change the meaning of simple English words so that the resulting interpretation conforms the statute to the sociological and economic views of judges or lawyers. Words are to be given their usual and commonly understood meaning unless it is plain or clear that a different meaning was intended.

\*    \*    \*    \*    \*    \*

"Courts are not at liberty to impose their views of the way things ought to be simply because that's what must have been intended, otherwise no statute, contract or recorded word, no matter how explicit, could be saved from judicial tinkering."

The award should be set aside.