565 P.2d 515
**ALL STAR COACH, INC. and Home Insurance Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Sarah Camacho, Respondent Employee.**

**No. 12567–PR.**

Supreme Court of Arizona,
In Banc.

May 23, 1977.

Rehearing Denied June 21, 1977.

Everett, Bury, & Moeller, P. C. by J. Michael Moeller, Tucson, for petitioners.

Greg L. Folger, Chief Counsel, Phoenix, The Industrial Commission of Ariz., for respondent.

Gilbert Gonzalez, Tucson, for respondent employee.

GORDON, Justice:

This case comes to us on petition for review of the Court of Appeals' decision in *All Star Coach, Inc. et. al. v. Industrial Commission,* 26 Ariz.App. 3, 545 P.2d 965 (1976). The Court of Appeals affirmed an award for unscheduled permanent partial disability made by the Industrial Commission to applicant Sarah Camacho. The award of the Industrial Commission is set aside, and the opinion of the Court of Appeals is vacated.

The facts in this case are somewhat unusual. We are presented with two successive industrial injuries; the second injury, which ordinarily would close second with an unscheduled award, closed first. On October 3, 1969, the employee, Sarah Camacho, suffered an industrial injury to her right knee during the course and scope of her employment with the employer, All Star Coach, Inc. Eighteen days later on October 21, 1969, she suffered a second industrial injury, this time to her left (major) hand during the course and scope of her employment with the same employer. This second injury, to her hand, was determined to have become stationary on October 28, 1971, and she was awarded a scheduled permanent disability amounting to 40% loss of use of the left (major) hand. At this time the first injury was still not stationary and she was receiving benefits.[1]

1. The award of a scheduled injury on the second occurrence was appealed to the Court of Appeals, *Camacho v. Industrial Commission,* 20 Ariz.App. 225, 511 P.2d 669 (1973), rev. denied, in an attempt to have the injury declared unscheduled under the principles of

*Ronquillo v. Industrial Commission,* 107 Ariz. 542, 490 P.2d 423 (1971). This attempt was rejected because she failed, at that time, to sustain her burden of proof that a prior non-industrial injury caused any reduction in her

Thereafter on April 23, 1974 the first injury to the right knee became medically stationary and on April 29, 1974 the carrier issued a notice of claim status terminating the employee's compensation and medical benefits with a finding of a scheduled, permanent partial disability equal to a 15% loss of use of her right leg. A request for hearing was filed by the employee. The employee does not contest the finding of 15% impairment to her right leg but contends she was properly awarded an unscheduled disability, rather than a scheduled one, on the grounds that she suffered two successive scheduled injuries requiring the second of such injuries to be considered as resulting in an unscheduled disability pursuant to A.R.S. § 23–1044(C), (D), (E), and (F), and *Rodgers v. Industrial Commission,* 109 Ariz. 216, 508 P.2d 46 (1973).

There is no argument that had the first injury to the right knee been closed first, the second injury would have been unscheduled. *Rodgers v. Industrial Commission,* 109 Ariz. 216, 508 P.2d 46 (1973); *Ronquillo v. Industrial Commission,* 107 Ariz. 542, 490 P.2d 423 (1971). But, as noted, the second injury in this case closed first, and it is the contention of the employee that the Industrial Commission Hearing Officer correctly interpreted the statute as requiring that the first injury now be treated as the unscheduled one. The carrier argues that under the clear terms of the statute the first injury cannot be considered unscheduled and the second is already closed as scheduled. In effect the carrier's argument is that Camacho is not entitled to an unscheduled disability award at all merely because of the sequence in which the claims closed. After a hearing the Industrial Commission issued an award granting the applicant an unscheduled permanent, partial disability for the first injury; this was affirmed by the Court of Appeals, 26 Ariz.App. 3, 545 P.2d 965 (1976).

The Industrial Commission Hearing Officer's decision concerning applicant's knee earning capacity. This prior appeal has no effect upon the issues here involved.

injury was made with a finding of 15% impairment to her right leg. Of central importance was Finding Number 10, which stated:

"10. That as a result of the scheduled disability awarded in Case No. 9/7–30–39 [the hand injury of October 21, 1969], and the scheduled disability sustained in the instant case, the applicant has sustained two scheduled industrial injuries, and is therefore entitled to an award of unscheduled permanent partial disability. *Rodgers v. Industrial Commission,* 109 Ariz. 216, 508 P.2d 46 (1973); *Ossic v. Verde Central Mines,* 46 Ariz. 176, 49 P.2d 396 (1945)."

We are faced with one issue here: when a subsequent scheduled industrial injury closes before a preceding scheduled industrial injury, how may an award for unscheduled injury under A.R.S. § 23–1044(E) be made?

Our workmen's compensation law concerning disabilities looks to a worker's earning capacity after an industrial accident. *See Smith v. Industrial Commission,* 113 Ariz. 304, 552 P.2d 1198 at note 1 (1976). An individual with physical impairment may in fact earn as much or more after an accident as before, so no actual loss of earnings may result. The Legislature has provided, in A.R.S. § 23–1044(B), for compensation when certain "scheduled" injuries are suffered. Loss of earning capacity is not an issue; such loss is presumed. *See* A.R.S. § 23–1044(B) and *Ujevich v. Inspiration Consol. Copper Co.,* 42 Ariz. 276 at 280, 25 P.2d 273 at 275 (1933). Compensation is computed at 55% of the average monthly wage earned, with statutory periods set. When injuries are unscheduled, compensation is made at 55% of the difference between the worker's average monthly wage before the accident and the reduced monthly earning capacity resulting from the disability. A.R.S. § 23–1044(C).

When a worker suffers successive injuries, A.R.S. § 23–1044(E) is triggered.[2] Un-

2. A.R.S. § 23–1044(E) states:
  "E. In case there is a previous disability, as the loss of one eye, one hand, one foot or

der that statute and cases interpreting it, a subsequent injury is treated as resulting in an unscheduled disability, and earning capacity is an issue.[3] In the ordinary case, a worker suffers a scheduled industrial injury, the injury becomes stationary and is closed. Subsequently, if the worker suffers another industrial injury it is treated as unscheduled when an award is made under A.R.S. § 23–1044(E).

The emphasis of our law in this area is that awards for two scheduled injuries would not adequately compensate the worker because the cumulative effect was more debilitating than two scheduled awards would cover. *Ossic, supra.* If the requirements are met, a worker is entitled to an unscheduled award which more realistically reflects the overall diminution in earning capacity he or she has suffered. *See Ronquillo v. Industrial Commission* 107 Ariz. 542, 490 P.2d 423 (1971). As *Ronquillo, supra,* indicated, when the prior injury is industrial and scheduled, an irrebuttable presumption is raised as to loss of earning capacity. If the previous injury is non-industrial, but would have been scheduled if it had been industrial, the presumption as to loss of earning capacity is rebuttable.[4]

*Ronquillo, supra,* articulates the rule we apply today, "that where there is a prior scheduled industrially related injury, the Commission may not ignore the previous injury when the workman suffers a second industrial injury." 107 Ariz. 542 at 544, 490 P.2d 423 at 425 (1971). When appellant's hand became stationary, the Industrial Commission could not have made an award for an unscheduled disability, because there was no previous disability as required by A.R.S. § 23–1044(E). A scheduled award was improper as well because of the potential that the prior injury would become stationary with either presumed or actual loss of earning capacity. In order to preserve the language of A.R.S. § 23–1044(E) and avoid the "race to close" problems which are inevitable if the Industrial Commission's award were upheld,[5] we hold that when a subsequent scheduled industrial injury becomes stationary before a previous scheduled industrial injury, the Commission shall hold the subsequent injury open until the first injury becomes stationary. In the case before us, the hand injury award is void under the law as we declare it today. That injury should not have been closed until the previous injury became stationary and the percentage of disability determined. When both injuries are stationary, in this case and in the future, the prior injury should be closed according to A.R.S. § 23–

---

otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

3. We have dealt with A.R.S. § 23–1044(E) many times before, and its interpretation in circumstances of multiple injuries is ordinarily clear. For historical development of subsection (E), see *Ossic v. Verde Central Mines*, 46 Ariz. 176, 49 P.2d 396 (1935); *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 490 P.2d 423 (1971); *Gallardo v. Industrial Commission*, 16 Ariz.App. 491, 494 P.2d 391 (1972); *Rodgers v. Industrial Commission*, 109 Ariz. 216, 508 P.2d 46 (1973); *Ross v. Industrial Commission*, 112 Ariz. 253, 540 P.2d 1234 (1975).

4. For an analysis of the *Ronquillo* presumption, see *Gallardo v. Industrial Commission*, 16 Ariz. App. 491, 494 P.2d 391 (1972). The Court of Appeals in *Gallardo* used our loss of earning capacity interpretation of "disability" to arrive at the conclusion that scheduled industrial inju-

ries under A.R.S. § 23–1044(B) necessarily implied a permanent loss of earning capacity.

5. The importance of the sequence of awarding a scheduled or unscheduled disability can be illustrated. The maximum number of months under the schedule for loss of a leg or a major hand is 50 months. In our case, the applicant's first injury resulted in a 15% permanent disability; the second injury was set at 40%. Calculating the statutory 55% of the maximum monthly wage of $1,000, the first injury would be "worth" $4,125, if scheduled. The hand injury would be "worth" $11,000. Under a scheduled award the dollar value calculated is paid. An unscheduled award depends on earning capacity; if the injury had no effect on earning capacity, no award is forthcoming. It would generally be advantageous to a carrier to close the $4,125 claim as scheduled, and pay unscheduled benefits on the claim which would be more expensive if treated as scheduled. The Industrial Commission's resolution could result in a "race" to close with the interests of carriers and injured workers clearly in conflict.

1044(B) and the subsequent injury should be closed with an award under A.R.S. § 23–1044(E). Although this resolution will obviously delay the final award for the subsequent injury, we wish to avoid any interpretation of A.R.S. § 23–1044(E) which would do violence to the statutory mandate that such unscheduled awards be predicated on the presence of a "previous disability."

Defendant carrier contends that applicant Camacho did not raise the issue of unscheduled injury at the hearing on the second injury. This assertion underlines the employee's dilemma between raising an issue prematurely and asserting a claim untimely. At the hearing on the second injury which closed first, there was no "previous disability" to trigger a claim for an unscheduled award. Neither could the applicant be expected to refrain from asserting a claim on the first injury to close until all potentially permanent injuries were closed, although this opinion now authorizes that procedure. By delaying the closing of the subsequent injury, the claim for unscheduled award would not be timely until both injuries were stationary.

The award of the Industrial Commission, No. 9/6–90–86, is set aside. Since the award closing the subsequent injury is void, it should be treated as having remained open and should so remain until the prior injury becomes stationary. Both injuries should then be closed by the Commission with whatever scheduled or unscheduled awards are appropriate.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.