578 P.2d 607

John W. GATES, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Lanoria Cattle Company, Respondent
Employer,

The Home Insurance Company,
Respondent Carrier.

John W. GATES, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Heady-Ashburn Ranch, Respondent
Employer,

State Compensation Fund, Respondent
Carrier.

Nos. 1 CA–IC 1647, 1 CA–IC 1648.

Court of Appeals of Arizona,
Division 1,
Department C.

Aug. 25, 1977.

Rehearing Denied Nov. 23, 1977.

Review Granted Dec. 20, 1977.

jury was closed on May 18, 1967 with a scheduled award of 25% impairment of the second finger, right hand, and a total of $721.88 compensation was paid.

On August 25, 1971, while employed by Lanoria Cattle Company, Gates was again injured, this time to his left arm (injury number two). Lanoria Cattle Company carried industrial coverage with The Home Insurance Company (Home). This claim was closed on December 4, 1972 with a scheduled award of 5% impairment of the left arm and a total of $1,062.50 compensation was paid. This award is not before this court nor administratively before the Commission.

Gates then petitioned to reopen his injury number one case because of complications and this was granted on December 13, 1972. While this first injury case was still open, he suffered a third injury on January 3, 1973 to the fingers of the left hand (injury number three). This accident is the industrial responsibility of Home.

In the injury number three case, a Notice of Claim Status was issued on February 10, 1975 with a scheduled award of 55% impairment of the third finger, left hand, and a total of $1,237.50 compensation was to be paid. On April 10, 1975, a Request for Hearing was directed to this Notice of Claim Status alleging total disability of the left hand. There was no request that injury number three be considered as unscheduled. On June 23, 1975, the Request for Hearing was withdrawn upon payment to Gates of $3,500.00. The effect of the withdrawal of the Request for Hearing made the February 10, 1975 scheduled award final.

On December 17, 1975, a Notice of Claim Status in injury number one was issued by the Fund closing the first injury as scheduled with a 30% functional loss of the right arm. A timely Request for Hearing was directed to this Notice of Claim Status,

Davis, Eppstein & Tretschok by Robert W. Eppstein, Tucson, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Everett, Bury & Moeller, P. C. by J. Michael Moeller, Dan A. Sinema, Tucson, for respondent Employer Lanoria Cattle Co. and respondent carrier The Home Ins. Co.

Robert K. Park, Chief Counsel, State Compensation Fund by George B. Morse, Phoenix, for respondent employer Heady Ashburn Ranch and respondent carrier State Compensation Fund.

## OPINION

JACOBSON, Presiding Judge.

The issues raised by these two Special Actions—Industrial Commission, relate to the problem of whether a prior scheduled injury[1] which has been reopened, followed by another injury which has been closed as scheduled, must be closed as unscheduled[2] and if so, whether a right of contribution exists between the carriers responsible for the two injuries.

These two special actions are the result of two separate and distinct awards, separately appealed and briefed and though combined at time of oral argument, remained separate cases. They have been consolidated only for opinion writing purposes because of ease of understanding.

The facts giving rise to the review of the decisions entered are as follows. On May 1, 1966, John Gates, while employed by Heady-Ashburn Ranch received an injury to his finger (injury number one). Gates' employer carried industrial coverage with the State Compensation Fund (Fund). This in-

---

1. "Scheduled" injuries are compensable under A.R.S. § 23–1044(B) without regard to actual loss of earning capacity, such loss being presumed.

2. "Unscheduled" injuries are compensable under A.R.S. § 23–1044(C) based upon actual loss of earning capacity attributable to the injury.

contending that this injury must now be classified as unscheduled.

Thereafter, on March 5, 1976, Gates filed a "Petition for Rearrangement or Readjustment" in the injury number three case. This was denied by the Industrial Commission. Gates then filed a Request for Hearing as to the denial and a motion to consolidate the injury number three case with the injury number one case. On July 16, 1976, the Commission entered its findings, dismissing the Request for Hearing and denying the motion to consolidate. These findings are on review in this court in 1 CA–IC 1647.

Subsequently, a hearing was held on the injury number one case which resulted in a Finding and Award for scheduled permanent partial disability of 30% of the right arm. This finding is the subject matter of 1 CA–IC 1648.

There is no contention that any of the various injuries suffered by Mr. Gates, if they had occurred as separate first injuries would not be scheduled in nature under A.R.S. § 23–1044(B). Nor is there any contention that the reclosing of injury number one if no intervening injuries had occurred would not be a scheduled injury under the same statute. Specifically, Gates does not want injury number two or injury number three cases closed in any manner other than as scheduled awards. This is for the obvious reason that he has suffered no loss of earning capacity as to these injuries, and if they were determined to be unscheduled he would receive no compensation whatsoever.

Rather his argument in both cases is based upon the interplay between the cases of *Ronquillo v. Industrial Commission,* 107 Ariz. 542, 490 P.2d 423 (1971) and the Court of Appeals decision in *All Star Coach, Inc. v. Industrial Commission,* 26 Ariz.App. 3, 545 P.2d 965 (1976), *vacated* 115 Ariz. 335, 565 P.2d 515 (Sup.Ct. No. 12567–PR, May 23, 1977), *motion for rehearing denied,* June 21, 1977, *mandate issued,* June 22, 1977.

In *Ronquillo,* the Supreme Court adopted the principle that where the claimant had suffered a prior industrially related scheduled injury, a second industrial injury even though it would have been scheduled had it occurred first in time, is to be treated as an unscheduled injury. *See Gallardo v. Industrial Commission,* 16 Ariz.App. 491, 494 P.2d 391 (1972) for an explanation of this result.

*All Star Coach* involved a factual situation where the claimant suffered a scheduled injury to her right knee. Eighteen days later she suffered another injury to her left hand, which would have been scheduled if it had occurred first in time. The second injury became medically stationary first and was closed as a scheduled injury. Subsequently, the first injury became stationary and was closed by the hearing officer as unscheduled even though it was first in time. This court's decision in *All Star Coach, supra,* in affirming the hearing officer's decision, in essence held that where two consecutive scheduled injuries occur and the second injury closes first as a scheduled award, the first injury must be closed as unscheduled.

Based upon these two cases, Gates' contentions are as follows:

(1) As to the injury number one case, since it was reopened and had not become stationary at the time injury number three had occurred and was closed, under this court's decision in *All Star Coach, supra,* this injury must be closed as unscheduled.

(2) As to the injury number three case, since the injury number one case will be closed as unscheduled, thus possibly exposing the carrier for this injury to a greater liability than would normally be expected had injury number three not occurred, it is only equitable that the carrier for injury number three contribute to the potential liability flowing from injury number one.

These matters were orally argued to this court on May 22, 1977. On May 23, 1977, the Arizona Supreme Court issued its opinion on review of this court's opinion in *All Star Coach (All Star Coach, Inc. v. Industrial Commission,* 115 Ariz. 335, 565 P.2d 515 (Sup.Ct. No. 12567–PR, May 23, 1977), *(motion for rehearing denied,* June 21, 1977, *mandate issued,* June 22, 1977.)

The Supreme Court's decision in *All Star Coach* introduced a new element to the equation. While this decision retained the prior concept that liability for injuries is settled at the time of the injury and subsequent injuries cannot change this liability, it added the concept that the closing of successive injuries must be in sequence[3] and if subsequent injuries are closed before a prior injury becomes stationary, that closing is *void*.

As is stated by the Supreme Court:

"When appellant's hand [second injury] became stationary, the Industrial Commission could not have made an award for an unscheduled disability, because there was no previous disability as required by A.R.S. § 23–1044(E). *A scheduled award was improper as well because of the potential that the prior injury would become stationary with either presumed or actual loss of earning capacity.* In order to preserve the language of A.R.S. § 23–1044(E) and avoid the 'race to close' problem which are inevitable if the Industrial Commission's award were upheld, [footnote omitted] we hold that when a subsequent scheduled industrial injury becomes stationary before a previous scheduled injury, the Commission shall hold the subsequent injury open until the first injury becomes stationary. *In the case before us, the hand injury [the second injury] award is void under the law as we declare it today.*

\*     \*     \*     \*     \*     \*

"Since the award closing the subsequent injury is void, it should be treated as having remained open and should so remain until the prior injury became stationary." (footnote omitted) (emphasis added)

The Supreme Court's opinion is not enlightening as to why the second injury award is void (does the Industrial Commission lack jurisdiction to close a second injury as scheduled where a prior scheduled injury exists?) nor does the court tell us how it acquired jurisdiction over the second award to declare it void since that award was never before it. Nor does the Supreme Court's opinion give any guidance either to this court or hearing officers as to how we should treat reopened scheduled awards where intervening injuries have occurred. In short, we are at a complete loss to logically or rationally apply the Supreme Court's concept of voidness to *res judicata,* non-appealed awards.

If the underlying rationale of the Supreme Court's decision is that the Industrial Commission lacks jurisdiction to enter a scheduled injury award following a prior industrial scheduled injury and therefore that award is "void" (we can logically conjure up no other rationale) then facially the result in this case would be:

(1) The scheduled injury number two award is void. The result of declaring that award void and determining that it must be closed as unscheduled is that even though that award is not before us, the parties are satisfied with its disposition, it is *res judicata* and final and presumably the claimant has spent the $1,062.50 he received as a result of that award, he would have to return the money since under the facts here he cannot prove a loss of earnings to qualify under an unscheduled award. (The due process ramifications of such a holding are to say the least, horrendous.)

(2) The scheduled injury number three award is void. While the injury number three award is technically before us in 1 CA–IC 1647, neither the claimant nor the carrier has contended that the character of that award (i. e., scheduled) should be changed and that it is apparent that the payment under that award of $3,500.00 was a compromise and settlement figure where all parties bought and received their peace. However, the result of declaring the injury number three award void is, in all probability, going to require the claimant to refund the $3,500.00 as he cannot show a loss of earning capacity related to this injury.

---

**3.** This concept has much to recommend it and had the Supreme Court's opinion ended at this point, the remainder of this opinion would be unnecessary.

(3) If awards for injuries number two and three are void, and since this court has no statutory authority to do anything but affirm or set aside the award, A.R.S. § 23–951, (although the Supreme Court in *All Star Coach, supra,* "set aside with directions") these matters must be returned to the Industrial Commission for further proceedings which is going to entail additional time and expense for the Commission, the claimant and the carrier, the exact opposite of what the doctrines of finality and *res judicata* attempt to avoid.

(4) If a carrier is now jurisdictionally prohibited from closing subsequent scheduled injuries, as scheduled (even with the approval and urging of the claimant) the industrially scheduled injured claimant will, in all probability, become unemployable because of the substantial potential risk he will pose to employers.

While we have attempted to list some of the results of the *All Star Coach* decision, we, like counsel who appeared before us in this case, readily admit we cannot begin to realize all the consequences of the *All Star Coach* concept of voidness of prior *res judicata* awards. (For example, may the claimant whose subsequent scheduled injury was closed as scheduled by an unprotested Notice of Claim Status ten years later attack the validity of that award because it was "void"?)

Aside from our dissatisfaction with the results of *All Star Coach* and our inability to predict its consequences, were we merely in disagreement as to the legal principles to be applied in the sequence of successive injuries, we would be compelled not only by *McKay v. Industrial Commission,* 103 Ariz. 191, 438 P.2d 757 (1968) but by the traditional judicial hierarchy of appellate review to follow the holding in *All Star Coach.* However, in order to arrive at the result desired in *All Star Coach,* the Supreme Court was compelled to review and void an award (substitute "judgment" in a civil case), which had not been brought before it by the parties, and over which it had never acquired subject matter jurisdiction. As previously intimated, depriving the parties

of the property rights represented by that voided award, without notice, and without an opportunity to be heard and without the court ever acquiring subject matter jurisdiction over the award is a denial of due process prohibited by both Arizona Constitution art. 2 § 4 and the fourteenth amendment to the United States Constitution. *McManus v. Industrial Commission,* 53 Ariz. 22, 85 P.2d 54 (1938).

Likewise, if we were to literally follow *All Star Coach* in this case, we would also be guilty of denying due process to the parties by taking away from them property interests represented by the injury number two award and the injury number three award, against the wishes of the parties and without our jurisdiction being invoked to do so. Because of our lack of subject matter jurisdiction over injury number two and our jurisdiction not having been invoked to hold injury number three award void, we simply cannot reach the result required by the Supreme Court's opinion in *All Star Coach.*

Having concluded that we cannot apply the "void" concept of *All Star Coach,* we must how deal with the basic issue presented by this review.

In 1 CA–IC 1648 (the first injury award), petitioners contend that the reopened scheduled award must be closed as unscheduled based upon the Court of Appeals opinion in *All Star Coach.* The Supreme Court's opinion in *All Star Coach* vacated the Court of Appeals decision and properly so.

■ We start with the universally recognized principle that the liability imposed and the benefits received in workmen's compensation cases are determined by the causal effect of the liability creating injury. *Application of Barrett,* 78 Ariz. 219, 278 P.2d 409 (1954). Thus, benefits and liability should rationally flow from the effect of that injury and are unaffected by other subsequent happenings not causally related to that injury. *Gullick v. Industrial Commission,* 94 Ariz. 237, 383 P.2d 123 (1963); *Jaynes v. Industrial Commission,* 7 Ariz. App. 78, 436 P.2d 172 (1968). This does not

mean, however, that pre-existing conditions, be they physical or a status legally created, may not affect both the liability and benefits. *Tatman v. Provincial Homes,* 94 Ariz. 165, 382 P.2d 573 (1963); *State Compensation Fund v. Keefe,* 22 Ariz.App. 311, 526 P.2d 1266 (1974); *Royal-Globe Ins. Co. v. Industrial Commission,* 15 Ariz.App. 242, 488 P.2d 178 (1971). But these pre-existing conditions must exist at the time of the injury giving rise to the liability and benefits to affect that liability or benefit.

■ Thus, in *All Star Coach,* the first injury to the knee, being unaffected by the subsequent injury to the hand, and there being no prior pre-existing conditions, either physical or legal, that injury legally could only be closed as a scheduled award. This the Supreme Court in *All Star Coach* properly recognized and so held. Logically, then, subsequent injuries, unless they are causally related to the prior injury, or their legal status, can have no affect upon the liability creating and benefit bestowing injury. This was not recognized by the Court of Appeals opinion in *All Star Coach* and thus the wrong conclusion resulted.

The same result should obtain when a previously closed scheduled award is reopened. Then the inquiry is directed to compensating those injuries which are causally related to the original liability creating injury. But again, the determination of how the reopened claim is to be closed must refer back to the status of the claimant at the time of the original injury and how that injury subsequently affected him,[4] and not be concerned with subsequent non-causally connected injuries or their legal status. To hold otherwise would mean that an employer not only takes his employee as he finds him, but that he must suffer the consequences of what others may do to him after he has left his employment.

■ Applying these principles to injury number one (the reopened scheduled award, 1 CA–IC 1648), it is apparent that the subsequent injuries suffered by the claimant were not causally related to the liability creating injury and since their legal status cannot affect that prior award and his present medical stationary condition still places him in the scheduled category, that award must be affirmed.

Since the only relief requested in 1 CA–IC 1647 was contingent upon injury number one being classified as unscheduled, relief we declined to grant, the award denying consolidation and refusing to order contribution is likewise affirmed.

DONOFRIO and OGG, JJ., concurring.

---

4. It is therefore logically possible that a reopened scheduled injury would have to be closed as unscheduled, because of the natural progression and consequences of the original injury.