588 P.2d 857

Ronnie VAN SICKLE, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Swengel-Robbins Contracting,
Respondent Employer,

Continental Casualty Co., Respondent
Carrier,

Pacific Employers Insurance Company,
Respondent-Cross Petitioner.

No. 1 CA–IC 1747.

Court of Appeals of Arizona,
Division 1,
Department C.

Dec. 5, 1978.

Alston, Edwards, Scott & Novak, P. C. by
Cecil A. Edwards, Jr., Phoenix, for petition-
er.

John H. Budd, Jr., Chief Counsel, The
Industrial Commission of Arizona, Phoenix,
for respondent.

Jennings, Strouss & Salmon by Ronald H. Moore, and Steven C. Lester, Phoenix, for respondent employer and Continental Casualty Co.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by J. Victor Stoffa, Phoenix, for Pacific Employers Ins. Co.

## OPINION

NELSON, Judge.

The primary question presented in this Special Action—Industrial Commission is whether successive otherwise scheduled injuries to the same anatomical site must be considered unscheduled when they all become stationary simultaneously.

The factual posture of the case raises additional questions, including the hearing officer's jurisdiction to hear one of the claims, thereby necessitating an extensive recitation of the facts.

The claimant, Ronnie Van Sickle, was employed by Swengel-Robbins, a contracting firm, at all times pertinent to this action. On October 7, 1973, while Swengel-Robbins was insured by Pacific Employers Insurance Company (Pacific), Van Sickle suffered an industrial injury to his left knee. Van Sickle received medical benefits for this injury but according to the notice of claim status had not missed more than seven days of work and therefore received no compensation for lost earnings. A.R.S. § 23–1062(B). Although Van Sickle continued to have pain in his knee, his physician's report [1] resulted in his benefits being terminated with no permanent physical disability on November 5, 1973 by a notice of claim status issued January 25, 1974. No hearing was requested following this notice and the claim was closed.

On February 27, 1974, Van Sickle suffered a second industrial injury to his left knee. At the time of this second injury, Continental Casualty Co. (CNA) was the workmen's compensation insurance carrier

for Swengel-Robbins. On May 31, 1974, Van Sickle filed a claim for this second injury with CNA, which they denied, and a hearing was requested. In addition to the claim for a new injury, Van Sickle filed a petition to reopen the October 7, 1973 injury claim, which Pacific denied by a notice of claim status dated August 15, 1974. A hearing was also requested on that notice. These two causes were consolidated and a formal hearing was held on December 18, 1974.

The hearing officer found that Van Sickle suffered a new injury on February 27, 1974 which extended the damage caused by the previous injury. He awarded Van Sickle benefits from CNA because the employer must take the employee as he finds him, citing *Caganich v. Industrial Commission*, 108 Ariz. 580, 503 P.2d 801 (1972). *See also: Morrison-Knudsen Company, Inc. v. Industrial Commission*, 115 Ariz. 492, 566 P.2d 293 (1977). CNA paid benefits to Van Sickle until November 6, 1975, when it terminated temporary compensation and found a permanent disability. On November 12, 1975, CNA issued a notice of permanent disability benefits, in which the applicant was given a 5% scheduled permanent disability of the left leg. Van Sickle requested a hearing on this notice.

Subsequently, on December 4, 1975, Van Sickle filed another petition to reopen his October 7, 1973 claim. When this petition was denied by Pacific an additional hearing was requested. These two matters were again consolidated for hearing, resulting in the award herein questioned.

The hearing officer in his award additionally considered an alleged third industrial injury suffered by Van Sickle to his left knee on September 26, 1974, for which a claim had not been filed. The carrier, CNA, however submitted a letter to the Commission conceding that the injury was at issue.

---

1.  This doctor, Dr. Taylor, died prior to the hearings in this matter. There was, therefore, no testimony in the record regarding his findings.

In his findings, the hearing officer implicitly decided that Van Sickle was entitled to recovery for both the second injury incurred on February 27, 1974 and a reopening of his October 7, 1973 injury. His decision was based upon the testimony of Dr. O. Melvyn Phillips, Van Sickle's orthopedic surgeon. Dr. Phillips testified that when he operated on Van Sickle's knee following the second injury, he discovered that the claimant had sustained some transverse tears of the meniscus as a result of the October 7, 1973 injury. He indicated that these tears were probably not apparent at the time of petitioner's discharge by Dr. Taylor, but became evident during the knee operation, thus constituting a previously undiscovered condition causally related to the first industrial injury.

The hearing officer found that all three injuries became stationary simultaneously on November 6, 1975, resulting in a scheduled 10% permanent impairment to Van Sickle's left leg. Additionally, in view of Dr. Phillips' testimony, the hearing officer decided that 2½% of the impairment was related to the October 7, 1973 injury, 2½% was related to the February 27, 1974 injury, and 5% was related to the September 26, 1974 injury. He therefore apportioned the liability between the insurance carriers, with 2½% of the scheduled award to be paid by Pacific and 7½% to be paid by CNA.

The question presented to us is whether this division was proper under current case law and further, whether the award should have been scheduled or unscheduled.

■ At the outset, we must consider whether the hearing officer, and ultimately this Court, had jurisdiction to consider the claim for the September 26, 1974 injury. As the hearing officer stated, as of the time of his award no formal claim had been filed for that injury[2]. Since questions of jurisdiction may be raised and reviewed for the first time on appeal, we believe this claim warrants a review. *In re Appeal in Pima County, Juvenile Action No. J–46735*, 25 Ariz.App. 424, 544 P.2d 248 (1976); *Bates v. Springer of Arizona, Inc. v. Friermood*, 109 Ariz. 203, 507 P.2d 668 (1973).

The workmen's compensation statutes, most particularly A.R.S. §§ 23–1061(A) and 23–947, specifically set forth the procedures which must be complied with in order to have a valid claim and appeal therefrom. A.R.S. § 23–1061(A) says:

"A. Notwithstanding the provisions of subsection D of § 23–908, no claim for compensation shall be valid or enforceable unless the claim is filed with the commission by the employee, . . . in writing within one year after the injury occurred or the right thereto accrued. The commission upon receiving a claim shall give notice to the carrier."

Further, A.R.S. § 23–947 states:

"§ 23–947. Time within which hearing must be requested

A hearing on any question relating to a claim shall not be granted unless the employee has previously filed an application for compensation within the time and in the manner prescribed by § 23–1061, and such request for a hearing is filed within sixty days after the notice sent under the provisions of subsection F of § 23–1061 or within sixty days of notice of a determination by the commission, insurance carrier or self-insuring employer under § 23–1047 or § 23–1061 or within ten days of all other awards issued by the commission. As amended Laws 1971, Ch. 173, § 12; Laws 1974, Ch. 184, § 7, eff. May 17, 1974."

■ In interpreting these statutes, the Court in *Young v. Industrial Commission*, 19 Ariz.App. 304, 506 P.2d 1089 (1973), clearly stated that the jurisdiction of the

---

**2.** On December 20, 1976, the day the award was filed in this case, and more than two years after the September 26, 1974 injury, Van Sickle filed a claim for that injury. The claim was denied and a hearing was requested. The request for hearing was, however, dismissed by the hearing officer on October 25, 1977, when he determined that the December 20, 1976 award disposed of that claim. We do not reach any issues which may have been raised by these subsequent proceedings as to the claimed third injury, since no special action was filed based upon the dismissal of October 25, 1977.

Industrial Commission could only be invoked by following the claims procedures set forth in the statute. "In order for the Industrial Commission to gain jurisdiction over a particular accident, or claim, a formal application for benefits must be filed with the Industrial Commission and either accepted for benefits by the particular insurance carrier or denied, and the compensability of such injury placed into issue by timely petition for hearing." *Young*, 19 Ariz.App. at 306, 506 P.2d at 1091. This interpretation was reiterated in the recent decision of *Sun Control Tile Company v. Industrial Commission*, 117 Ariz. 268, 571 P.2d 1064 (App.1977). Therefore, since no formal claim was filed for the September 26, 1974 injury, the hearing officer had no jurisdiction to consider the alleged injury.

■ In addition to the Commission's lack of jurisdiction, recent decisions mandate that the award be set aside on other grounds as well. This case falls squarely within the principles outlined in *Rodgers v. Industrial Commission*, 109 Ariz. 216, 508 P.2d 46 (1973). There, the petitioner suffered an industrial injury resulting in the loss of two fingers of his right hand, a 45% functional loss of use of his right hand under A.R.S. § 23–1044(B). Thereafter, in another industrial injury, the petitioner suffered a 20% functional loss of one of the remaining fingers of the same hand. The Commission found a disability equivalent to an additional 4% scheduled functional loss of his right hand.

Our Supreme Court found that the second injury to petitioner's right hand, being a second successive "scheduled" injury, was required to be treated as unscheduled under A.R.S. § 23–1044(E), thereby necessitating benefits being awarded in accordance with the petitioner's factually determined actual loss of earning capacity instead of following the fixed schedule of A.R.S. § 23–1044(B). In so finding, the Court followed the line of cases including

*Ossic v. Verde Central Mines*, 46 Ariz. 176, 49 P.2d 396 (1935), and *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 490 P.2d 423 (1971). If, as the hearing officer found, Van Sickle's first injury resulted in a 2½% impairment to his leg, that should be scheduled in accord with § 23–1044(B). Following the precedent set in *Rodgers*, however, we hold that Van Sickle's second successive scheduled knee injury must be treated as an unscheduled injury under A.R.S. § 23–1044(E).

■ CNA raises one point which merits additional discussion. It argues that the key language of A.R.S. § 23–1044(E)[3], which allows unscheduled awards mandates a "previous disability" which is conclusively presumed in the case of a previous scheduled award. *See Ronquillo*. However, since Van Sickle's claim for his first injury closed with no disability, and since all his injuries produced a disability which became stationary at one time, there was no "previous disability" under the language of A.R.S. § 23–1044(E).

We believe this contention has been answered by our Supreme Court's decision in *All Star Coach, Inc. v. Industrial Commission*, 115 Ariz. 335, 565 P.2d 515 (1977), where the Court held: "when a subsequent scheduled industrial injury becomes stationary before a previous scheduled industrial injury, the Commission shall hold the subsequent injury open until the first injury becomes stationary." 115 Ariz. at 337, 565 P.2d at 517. *See also Gates v. Industrial Commission*, 118 Ariz. 521, 578 P.2d 602 (1978). Following this analysis to its logical conclusion in the case before us, if all of Van Sickle's injuries became stationary simultaneously, his first injury would nonetheless close first, constituting a "previous disability" in the evaluation of subsequent injuries. The fact that the first injury was reopened, thereby constituting a previous disability, in no way detracts from this analysis. Whenever the first scheduled in-

3. "E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

jury results in a disability, the second injury must be unscheduled according to *All Star Coach, Inc.*

Although the present state of the evidence mandates an unscheduled award, at the hearing *de novo* of this matter, new evidence could be introduced supporting a finding that no disability existed as a result of the first injury. In that event, the second injury would of course be scheduled.

The award is set aside.

WREN, P. J., Department C, and EUBANK, J., concur.