968 P.2d 597

**Frances J. GLADYS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**TRW Safety Systems, Respondent Employer,**

**CNA Insurance Companies, Respondent Carrier.**

**No. 1 CA–IC 97–0056.**

Court of Appeals of Arizona, Division 1, Department E.

April 28, 1998.

Page & Hommel, L.L.P. by Robert J. Hommel, Scottsdale, for Petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

Cross & Lieberman, P.A. by David W. Earl and Lisa M. Ashbrook, Phoenix, for Respondents Employer and Carrier.

## OPINION

FIDEL, Presiding Judge.

¶ 1  Claimant Frances J. Gladys sustained two industrial injuries, each of which caused some permanent physical impairment. Before the Industrial Commission had determined whether the first, an unscheduled injury, had diminished her earning capacity, Claimant accepted, and permitted to become final, the scheduled classification of the second. Claimant now seeks to reopen the classification of the second injury, arguing that, because the first injury *did* cause a loss of earning capacity, the second should have been, and should now be, unscheduled. The Industrial Commission has denied reopening, from which ruling Claimant seeks review.

¶ 2  A question of finality is presented. Should Claimant now be relieved of the scheduled classification of her second injury upon the rationale that she previously lacked incentive to challenge that classification? We find not. We find rather that Claimant previously made, and is now bound by, a choice between competing incentives. She then chose the certainty of a scheduled award in preference to the uncertain future benefits that an unscheduled award might yield, and she may not now reopen that choice.

### I. HISTORY

¶ 3  Claimant worked seven years in the same factory for successive employers. In 1989, while employed by the first employer, Claimant injured her neck. This neck injury precluded her return to a strenuous quality control position, but she eventually returned to full-time sewing work without wage loss. We will refer to this claim as Claimant's "first injury claim" or "first impairment."

¶ 4  In 1990, after Respondent TRW Safety Systems had become Claimant's employer, Claimant filed a claim for gradual upper extremity injuries, which CNA, TRW's compensation carrier, accepted. We will refer to this claim as Claimant's "second injury

claim" or "second impairment." This case concerns the second impairment. Claimant argues that, in light of permanent residual effects of the first impairment, the second impairment should have been classified as unscheduled.[1]

¶5 In May 1991, the first injury claim was terminated without permanent impairment, but Claimant timely protested and eventually, in March 1992, obtained an award that established a 5% cervical impairment. In June 1992, however, Claimant returned to a full-time light-duty position without reduction in wages, and she permitted to become final a determination that she had no loss of earning capacity attributable to the first impairment. *See generally* Ariz.Rev.Stat. Ann. ("A.R.S.") § 23–947(B) (1995).

¶6 In the interim, in June 1991, CNA had terminated the second injury claim with a 10% right upper extremity impairment. CNA classified the disability as scheduled with compensation at 75% of the average monthly wage. (Because Claimant was unable to return to her date-of-injury employment, she was entitled, pursuant to A.R.S. § 23–1044(B)(21), to the elevated 75% rate of scheduled compensation.) Claimant initially challenged the classification, asserting that her second injury should be automatically unscheduled as a consequence of the permanent impairment that she then was attempting to attribute to the first injury. Claimant eventually withdrew her protest, however, and accepted scheduled disability compensation for the second injury. By that time, Claimant had returned to a full-time light-duty position without wage loss, and had accepted the determination that she had no loss of earning capacity from the first impairment.

¶7 In 1995, TRW eliminated Claimant's light-duty position and notified her that it could no longer accommodate her limitations. Claimant retained her current attorney (she had been represented by a different lawyer in the earlier proceedings) and petitioned to reopen the second injury claim. CNA denied the petition, and Claimant timely protested

this denial. At the ensuing hearings, Claimant testified that she recalled having withdrawn the protest of the scheduled disability classification because she was working full-time without loss of wages, but she could not recall the details of this decision. Claimant's former attorney did not testify, was not deposed, and did not submit an affidavit.

¶8 In an award denying reopening, the Administrative Law Judge ("ALJ") concluded that Claimant had failed to prove that the first injury was causing a diminution of her earning capacity at the time the second injury occurred. After exhausting administrative review proceedings, Claimant timely petitioned for appellate review.

## II. FINALITY

¶9 Claimant argues on review that her second injury should have been classified as unscheduled rather than scheduled because the first injury was causing her a loss of earning *capacity*, as distinguished from a loss of earnings, when the second injury occurred. This was so, she argues, despite the transitory availability of light-duty work for equal pay, because the first injury had permanently precluded her return to strenuous quality control work.

¶10 This argument puts the cart before the horse. Before attacking the scheduled classification of her second impairment on the merits, Claimant must overcome its finality. *See, e.g., Parkway Mfg. v. Industrial Comm'n,* 128 Ariz. 448, 452, 626 P.2d 612, 616 (App.1981); *State Compensation Fund v. Bunch,* 23 Ariz.App. 173, 175, 531 P.2d 549, 551–52 (1975), *reh'g denied,* 25 Ariz.App. 552, 545 P.2d 63 (1976).

¶11 Claimant first attacks the finality of the scheduled classification of her second impairment by arguing that any classification should have been withheld until the status of the first impairment had been finally resolved. The premature resolution of the second impairment, according to Claimant, was void under *All Star Coach, Inc. v. Industrial Comm'n,* 115 Ariz. 335, 565 P.2d 515

---

1. "A disabling industrial injury that would ordinarily be scheduled is unscheduled under Arizona law if the worker already suffers, at the time of injury, from a permanent earning capacity disability." *PFS v. Industrial Comm'n,* 191 Ariz. 274, 955 P.2d 30 (App.1997).

(1977). *All Star*, however, is distinguishable from this case.

¶ 12 *All Star* involved successive *scheduled* injuries, of which the second to occur was the first to become stationary. *See* 115 Ariz. at 335, 565 P.2d at 515. If order of closing rather than order of injury were permitted to determine which of two ordinarily scheduled industrial injuries would be the second, and therefore, unscheduled impairment,[2] then an employer/carrier could avoid liability for unscheduled disability compensation by closing first. To avoid this "race to close," the *All Star* court concluded that "the Commission shall hold the subsequent injury open until the first injury becomes stationary" and that a premature termination is void. 115 Ariz. at 337, 565 P.2d at 517.

¶ 13 In contrast, the current case did not invite or permit a race to close to determine which of two scheduled injuries would avoid unscheduling. Rather, it involved an unscheduled first injury and a second scheduled injury. Because the first injury was already unscheduled, the first injury carrier and employer had nothing to gain or avoid by a race to close.

¶ 14 There remains the argument that the second injury claim was prematurely closed and rated for a scheduled permanent impairment before it could be determined whether the second injury would become unscheduled by a demonstration that the first, unscheduled, injury had resulted in a loss of earning capacity. We note, however, that Claimant could have kept the status of the second injury open pending resolution of the first simply by maintaining her request for a hearing. Instead, Claimant, who was represented by counsel, chose to withdraw the request for hearing and accept the scheduled designation. We thus have a scheduled classification that became final by a claimant's choice and not by an employer's or carrier's strategic timing. We find nothing in *All Star* that makes such an election void.

■ ¶ 15 In a further effort to overcome finality, Claimant relies on *Gerhardt* to argue

that, because she lacked financial incentive to litigate the disability classification until she actually lost wages in 1995, claim preclusion should not apply. In *Gerhardt*, the claimant did not protest a denial of a back strain claim, but when serious conditions were subsequently diagnosed, the claimant petitioned to reopen the claim. *See Gerhardt v. Industrial Comm'n*, 181 Ariz. 215, 216, 889 P.2d 8, 9 (App.1994). This court recognized that the claimant had lacked incentive to seek compensability at a time when he had lost no wages, paid no medical expenses, and reasonably believed his injury was a minor strain. *Id.* at 218, 889 P.2d at 11. To "require a claimant to request a hearing . . ., even when there is no disputed issue to address at the time, merely to preserve any unforeseen, related claim that may later arise . . . defies common sense." *Id.*

¶ 16 This case is not comparable to *Gerhardt*. First, Claimant did not acquiesce in a denial of benefits. Rather, she chose the certainty of present scheduled benefits over the uncertain chance of greater future unscheduled benefits. Similarly, Claimant did not withdraw her protest of the scheduled disability classification because she lacked financial incentive to contest it but, at least in part, because she had financial incentive to accede—namely, the availability of scheduled disability compensation (indeed, an elevated level of scheduled disability compensation) that she could receive without need to demonstrate actual wage loss.

¶ 17 Further, far more than the undiscovered medical condition at issue in *Gerhardt*, the risk of future wage loss should have been reasonably foreseeable to a claimant who had returned to work in a light-duty job. Claimant could have elected to forego the certainty of scheduled compensation in favor of pursuing an unscheduled classification that would protect against this foreseeable risk:

[W]hile the immediately available "up front" dollars flowing from a scheduled classification have the appearance of being the remedy most favorable . . . [when a claimant does not immediately have an actual wage loss], a scheduled classification

---

**2.** A present industrial injury that would ordinarily be scheduled is conclusively presumed to be unscheduled if a prior industrial injury has re-

sulted in a scheduled award. *Ronquillo v. Industrial Comm'n*, 107 Ariz. 542, 543–44, 490 P.2d 423, 424–25 (1971).

would have the result of precluding the reopening and the awarding of future benefits based upon actual loss of earning capacity should the claimant's industrial impairments in the future result in an actual earning capacity loss.

*Tyrrell v. Industrial Comm'n*, 146 Ariz. 563, 565, 707 P.2d 967, 969 (App.1985) (Haire, J., specially concurring). Instead, Claimant chose the bird in the hand of a present, elevated, scheduled award over the bird in the bush of unscheduled protection against the risk of future earnings loss.

¶ 18 It was not, in short, as in *Gerhardt*, that Claimant lacked earlier incentive to fight the carrier's classification of her claim. It was rather that Claimant then had to choose between competing incentives. She then saw the benefits of acceding to the carrier's classification as more certain and desirable than the benefits of maintaining her challenge. This decision has become final, and there is nothing in *Gerhardt* that would permit Claimant to revisit and change it now.

¶ 19 For these reasons, we conclude that the ALJ correctly denied reopening. Although our analysis differs from the ALJ's, we will affirm an award that has reached the right result for a different reason. *See, e.g., Salt River Project v. Industrial Comm'n*, 126 Ariz. 196, 200, 613 P.2d 860, 864 (App.1980). We affirm the award and decision upon review.

GERBER and THOMPSON, JJ., concur.