734 P.2d 1036

**John TIPTON (Deceased), Charlotte Tipton (Widow), Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Permatank Engineering & Manufacturing Company, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 3512.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 20, 1987.

Review Denied April 8, 1987.

OPINION

HAIRE, Judge.

This is a special action review of an Industrial Commission award denying death benefits. Two issues are presented: (1) whether the Industrial Commission (Commission) had jurisdiction to adjudicate a widow's claim for death benefits; and (2) whether reasonable medical evidence supports the conclusion that the employee's death was unrelated to his industrial injury. Because we find that the Commission had jurisdiction and that reasonable medical evidence supports the award, we affirm the award.

On June 21, 1972, the employee suffered trauma to his head when a tornado demolished his workplace. The carrier accepted his compensation claim and subsequently closed it with a 10% permanent impairment. No permanent disability benefits were awarded.

In May 1975, the employee petitioned to reopen his claim. After a hearing, reopening was granted based on a finding "that at the time of the subject industrial injury the [employee] suffered organic brain damage, which has now resulted in an organic mental syndrome involving loss of mentation, double vision and ataxia, that this organic mental syndrome is directly related to the subject industrial injury." This award also found that the employee was 70% impaired as a result of this condition. The employee subsequently was awarded permanent total disability benefits.

This disability status continued until the employee died on November 10, 1984. The State Compensation Fund (Fund) then issued a notice of claim status terminating disability benefits. This notice also specified that the employee died "from causes other than his industrial injury." Attorney Bernard I. Rabinovitz, the authorized representative of the employee's estate, requested a hearing and alleged that "Charlotte P. Tipton, widow, is entitled to death benefits for the reason that [the employee's] death was related to his industrial injury/injuries." Hearings were duly scheduled.

Rabinovitz & Associates by Bernard I. Rabinovitz and Gary M. Israel, Tucson, for petitioner Employee.

Dennis P. Kavanaugh, Chief Counsel, Phoenix, for respondent The Industrial Com'n of Arizona.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix by Smith Michael, Tucson, for respondent Employer and respondent Carrier.

The widow and three medical experts appeared at these hearings. We will discuss the substance of their testimony below. Regarding the jurisdictional issue, however, the following is relevant.

During the widow's testimony, Attorney Rabinovitz responded to an objection by arguing that the widow "has a separate claim to her husband's claim.... She has the right to present her own case." In addition, the widow submitted a post-hearing memorandum "in support of her widow's claim." But after the administrative law judge entered his award denying death benefits, the widow for the first time filed a formal claim for widow's benefits and also asserted on administrative review that the Commission lacked jurisdiction to adjudicate death benefits in this proceeding.

The administrative law judge summarily affirmed the award. This special action followed.

On review, the widow again challenges the Commission's jurisdiction to adjudicate death benefits. She asserts that she protested the termination of her husband's benefits solely to avoid preclusion:

"[B]ecause [the Notice of Claim Status] went on to state that the [employee's] death was not related to the industrial condition, Petitioner felt that it was necessary to protect her right to a Widow's Claim to protest that Notice of Claim Status. The alternative would have been to allow the Notice of Claim Status to become final and then possibly face a *res judicata* argument later when she did file her Widow's Claim."

This assertion is factually unsupported. The Fund had the right to terminate disability benefits regardless of the cause of the employee's death. *See* A.R.S. § 23–1045(B) (permanent total disability benefits "shall be paid during the life of the injured person.") Yet the widow made no effort to resolve administratively her alleged concern about preclusion. To the contrary, she unequivocally claimed death benefits in her own behalf in her hearing request, during the hearings, and in her post-hearing memorandum.

■ The widow contends that she must have filed a formal claim for death benefits before the Commission could obtain jurisdiction. We disagree.

The current statute requires a party entitled to death benefits to file a written claim with the Commission within a year after the right to benefits accrues. A.R.S. § 23–1061(A). The statute makes no other formal requirements.

"Neither § 23–1061 nor any other statute within the Workmen's Compensation Law establishes any particular form or requirements for an application for compensation.... In the absence of anything indicating either a broader or more restrictive meaning, ... [a claim] is simply an unequivocal, written manifestation of an intention to claim benefits for an injury compensable under the terms of the Workmen's Compensation Law. An application need not 'follow any particular form or language'." *McNatt v. Industrial Commission*, 13 Ariz.App. 158, 160, 474 P.2d 1010, 1012 (1970) (citation omitted).

The authority on which the widow relies is consistent with *McNatt*. In *Van Sickle v. Industrial Commission*, for example, the employee had filed claims for two industrial injuries but had not filed a claim for a third injury. The court did not hold that a claim must meet certain formal requirements, as the widow urges, but instead merely held that the employee must file a claim pursuant to A.R.S. § 23–1061(A) for the Commission to obtain jurisdiction to adjudicate a claim for this third injury. *Van Sickle v. Industrial Commission*, 121 Ariz. 115, 117–18, 588 P.2d 857, 859–60 (App.1978). The authority cited in *Van Sickle* also involved failure to file any claim whatsoever. *See Sun Control Tile Co. v. Industrial Commission*, 117 Ariz. 268, 571 P.2d 1064 (App.1977); *Young v. Industrial Commission*, 19 Ariz.App. 304, 506 P.2d 1089 (1973).

■ In the present case, the widow unequivocally manifested in writing her intent to claim death benefits within one year of her husband's death. She accordingly claimed benefits within the meaning of

A.R.S. § 23–1061(A). The Commission, therefore, had jurisdiction to adjudicate her claim for death benefits.

The policies behind the Workers' Compensation Act support our determination to treat the request for hearing as a claim for widow's benefits. Under similar circumstances, the legislature has recognized that the name given a document is not determinative of the effect the Commission should give it. Instead of relying solely on the name of the document, the administrative law judge may look to the substantive content of the document and treat it as the correct claim even though it is misnamed. Pursuant to A.R.S. § 23–1061(L), for example, the Commission has authority to correctly designate misnamed petitions to reopen and claims for compensation. We see no reason not to treat the request for hearing as a claim for widow's benefits when the widow requested death benefits at every stage of the proceedings.

 The widow next denies that reasonable evidence supports the award. She claims that the only competent medical evidence established that as a result of the industrially related mental impairment the employee improperly ingested Klorvess medication and aspirated foreign particles into his lungs. She asserts that this aspiration precipitated a code arrest, which shortened the employee's life. The widow has the burden of proving that the industrial injury caused the employee's death. *See, e.g., Graver Tank & Mfg. Co. v. Industrial Commission,* 96 Ariz. 356, 358, 395 P.2d 712, 714 (1964). This burden requires her to establish every link in the causal chain. Accordingly, if reasonable evidence supports the conclusion that any link was broken, then the widow failed to prove her case.

The evidence indicates that the link between the work-related mental impairment and the ingestion incident is speculative. Internist Robert Leff, M.D., testified that the employee suffered from independent causes of mental impairment, such as medication, labile diabetes, and arteriosclerosis. Similarly, medical resident Kit Lam, M.D., testified that the employee's mental status fluctuated and that his status had many causes. Dr. Lam also testified that he could not express an opinion about the relationship between the industrial injury and the employee's death.

The link between the ingestion and the code arrest is also speculative. Dr. Leff testified that even if he assumed that the ingestion incident occurred, the medical information was insufficient for him to determine whether the incident precipitated the code arrest. Dr. Lam testified that the incidents were *possibly* related.[1] The other medical expert, Jose J. Fernandez, M.D., was merely asked to assume that the ingestion precipitated the code arrest.

Finally, the relationship between the code arrest and the employee's death is at best conflicting. According to the autopsy report, the probable cause of death was bronchopneumonia and arteriosclerotic heart disease leading to cardiac failure. The experts agreed that these conditions were unrelated to the industrial injury or the code arrest. Despite this cause of death, however, Drs. Fernandez and Lam testified that the code arrest shortened the employee's life. In contrast, Dr. Leff testified that the severity of the underlying pathology made it medically impossible for him to express an opinion about the shortening of the employee's life. Although the administrative law judge failed to make an express finding, we must conclude that he implicitly resolved this conflict in favor of Dr. Leff. *Cf. Pearce Development v. Industrial Commission,* 147 Ariz. 582, 712 P.2d 429 (1985) (implicit resolution of medical conflict even though findings did not mention this conflict).

The widow argues that Dr. Leff's testimony was incompetent because he refused to accept the Commission's finding that the employee suffered organic brain damage as a result of the industrial injury. While, as the Fund concedes, this refusal creates

---

[1]. Moreover, Dr. Lam was asked to assume as a foundational fact the widow's testimony that the code arrest occurred within minutes after the ingestion. The medical history of this incident, however, indicates that the widow gave a history of the ingestion occurring one hour before the code arrest.

some foundational problems, we reject the widow's argument.

Although Dr. Leff's refusal to accept the finding may have affected certain portions of his testimony, other portions remain unaffected. Dr. Leff testified that the employee suffered from many medical problems, any number of which could have caused the employee's death. Even if Dr. Leff had accepted the Commission's finding, the evidence does not require him to accept the causal link between the employee's injury and death. We find that Dr. Leff's testimony was competent.

Our standard of review is well established. The administrative law judge is the trier of fact. *E.g. Soto v. Industrial Commission*, 18 Ariz.App. 53, 54, 500 P.2d 313, 314 (1972). We will not substitute our judgment for his and will affirm the award unless no reasonable inference supports it. *See e.g., State Compensation Fund v. Industrial Commission*, 24 Ariz.App. 31, 535 P.2d 623 (1975). Applying this standard of review, we conclude that more than reasonable evidence supports the award. Accordingly, we affirm the denial of death benefits.

Award affirmed.

EUBANK, P.J., and GRANT, J., concur.